BITTNER *v.* JONES ET AL.

(Decided December 8, 1930.)

*Mr. Harold D. Leach,* for plaintiff in error.
*Mr. Sydney A. Davies,* for defendants in error.

WEYGANDT, J. Plaintiff in error, William P. Bittner, is in this court complaining of insufficiency in the amount of judgment rendered in his behalf by the trial court in a foreclosure action. His cross-petition alleges three notes secured by a second mortgage. To this the defendants in error, Carrie M. and Fred S. Jones, filed an answer admitting the execution of the notes and mortgage, but claiming that there was usury in the transaction and that therefore the amount actually due was considerably less than the sum asked in the prayer of the cross-petition.

Briefly the agreed statement of facts presents the following: In 1922 defendants in error wanted to borrow some money. July 10th of that year they executed a note in the sum of $14,500 to a lady by the name of E. M. Court. Simultaneously they also executed to her a second mortgage as security. Then on September 26, 1922, E. M. Court executed a $14,000 note to C. C. Bittner, the father of plaintiff in error. This latter note was delivered to C. C. Bittner by defendants in error. Also at the same moment they delivered to C. C. Bittner the note and mortgage that had been executed July 10, 1922, and which had been indorsed and assigned to him by E. M. Court. It was arranged that this note and mortgage were to be held by him as security for payment of the $14,000 note of E. M. Court. The following day he issued his check to E. M. Court in the sum of $12,880, which represented the proceeds of the loan. This check was at once indorsed by her to defendants in error.

Until his death June 5, 1924, C. C. Bittner received various payments from defendants in error. After

that date the payments were made to plaintiff in error, who was appointed administrator of his father's estate. Then in November, 1926, defendants in error decided to increase the amount of their first mortgage loan. This was arranged, and, although the second mortgage note had not matured, all evidences of the original loan were canceled and surrendered. In their place three new notes of substantially equal amounts were executed to E. M. Court by defendants in error for the unpaid balance of the loan. They also executed to her a new mortgage on the same property as security for the three notes, and she immediately assigned the mortgage and indorsed the notes in blank. The notes and mortgage were then delivered to plaintiff in error for the three heirs of C. C. Bittner. It is these notes upon which judgment was obtained below.

The sole question presented to this court is whether the dealings between these parties constituted but one continuous transaction, or two that were separate and distinct. If there was but a single continuous transaction, the trial court was correct in permitting defendants in error to interpose the usury in the original note as a defense in the present action on the three renewal notes. On the other hand, if two separate and distinct transactions were involved, the original usury was waived when the first transaction was closed, and may not be pleaded in this action.

The chief difficulty in this case arises from the fact that not a word appears in the record to indicate any expression of mutual intention by the parties. Did they regard the execution of the three new notes and mortgage as payment and discharge

of the original, and as the negotiation of a new loan, or did they consider the original loan as still in existence in the form of three notes instead of one? In view of this unfortunate lack of expressed intention, the only remaining recourse is to scrutinize the dealings of the parties to see whether there were circumstances from which the intentions of the parties might reasonably be inferred.

Plaintiff in error's chief contention is that his consent to the increase in the amount of the first mortgage was a detriment to him, and therefore constituted a new consideration for the execution of the three new notes. Unfortunately for him, the record contains nothing to substantiate this claim. The agreed statement of facts indicates that the principal of the original second mortgage note had been substantially reduced before the execution of the three new notes, but there is nothing to show whether the value of the mortgaged property had depreciated, remained the same, or increased. Obviously plaintiff in error suffered no detriment if the value of the property had increased so that his margin of security remained the same as it was originally.

Plaintiff in error also contends that an intention to negotiate a new loan is manifested by the execution of three new notes to the three heirs of C. C. Bittner. It is true that the original note was replaced by the three new ones, but it should be observed that they were not executed to the three heirs. They were executed and delivered to E. M. Court. Then they were indorsed by her and delivered to plaintiff in error. Thus the parties on the three new notes were exactly the same as on the original. But plaintiff in error argues that the

presence of E. M. Court on both occasions is of no significance. Then why were all four notes executed to her? The manifest truth is that she was there for a very definite purpose, and that was to enable the Bittners to defend their usury by appearing to be innocent holders of value. The entire course of dealing between the parties shows an intention to violate the usury laws. Plaintiff in error admits that defendants in error are entitled to a credit for the usury involved in the three renewal notes, but asks this court to countenance and protect the usury in the original note by inferring a mutual intention to regard the new notes as payment and discharge of the original.

In view of the well-recognized principle of law, that contracts shown to be usurious are construed strongly against the lender, and in view of the total lack of any expression of intention by the parties, it is the opinion of this court that the circumstances of the case do not warrant the inference of mutual intention to consider the three new notes as payment and discharge of the original.

No error appearing in the record, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

LEVINE, J., concurs.

VICKERY, P. J., dissenting. This action comes into this court on error to the common pleas court of Cuyahoga county, and the issue to be decided is between the plaintiff in error, William P. Bittner, Clarabel K. and Celina Bittner, who were the heirs at law of C. C. Bittner, deceased, and defendants in

error, Fred S. Jones and Carrie M. Jones, his wife, and the question involved is a peculiar one and of much importance.

It seems that Fred S. Jones was the owner of an apartment house on Lake avenue, somewhere near Cove avenue, in Lakewood, Ohio, and that he had mortgaged the property to a first mortgage holder, the Midland Mutual Life Insurance Company, but whose name for the purposes of this case is unimportant, for the sum of $30,000, and that, thereafter, desiring to increase the loan upon this real estate, he came in contact with one C. C. Bittner, then in this life, of Sandusky, Ohio, and the negotiations resulted in making the note and mortgage to Bittner in the sum of $14,000, about $4,000 of which seems to have been bonuses and usury. This ran along for a number of years, and bonuses were paid each year at which time payment of the note was extended, the mortgage remaining intact, and finally, when Bittner died, the mortgage and note secured by it was ordered distributed in kind to William P. Bittner, Clarabel Bittner and Celina Bittner, the three heirs of Bittner, and was so assigned by the administrators at the direction of the probate court and approved by the court. Thereafter they became the owners and holders of this note and mortgage in equal proportions, and apparently they carried on the same method that their father had done before them; that is, they extended the time of the payment of the loan upon the payment of a bonus for the ensuing year.

At the time this mortgage in question was given, there was, as already stated, a first mortgage of $30,000 and this second mortgage in the sum of

$14,000, when Jones wished to increase his loan upon the property, and for that purpose approached William Bittner, who was acting for himself and the other two heirs, and proposed that they waive their mortgage in the sum of $14,000, to another mortgage of a like sum of $14,000, so that, instead of there being $30,000 ahead of the Bittner mortgage there was approximately $45,000. The Bittners, strange to say, consented to this arrangement. Apparently, from the record, nothing was said about the amounts that afterwards were claimed to be bonuses, which were incorporated in the note; no question was raised by either Jones or the Bittners. Of course, the Bittners would not, and, probably, under the circumstances, Jones would not either, refer to the amount of bonuses included in this mortgage. A new mortgage was made to the second mortgage holder for $14,000 or $15,000 which was prior to the mortgage that was afterwards given to the Bittners, their mortgage given to their father having been canceled of record; and then, in order to give each distributee his property so that each, instead of having a share in one note, would have a portion of the note that was properly his or hers, a mortgage was given and three notes, the total amount of the three notes being that shown to be due on the face of the C. C. Bittner mortgage. A note was assigned to each one of the Bittners to whom the probate court had ordered a distribution of the estate, and a new mortgage was made to secure these three notes. That mortgage was made to a person by the name of E. M. Court, who was an employee in the office of Fred S. Jones, who, by the way, was the same person who was the grantee

named in the mortgage from Jones that afterwards was assigned to C. C. Bittner.

Immediately after this mortgage was made to E. M. Court, it was assigned and transferred to the Bittners to secure the three notes. Ultimately, an action was brought in the court of common pleas to foreclose the first mortgage, and the Bittners were made parties, and they set up their claim for the face of the mortgage and the notes that had been given to them after the $14,000 had intervened between their mortgage and the first mortgage, which they had waived, as already stated. Jones then pleaded usury, and at the trial in the common pleas court the sum of about $4,000 was deducted from the face of the notes and mortgage because the original transaction had been tainted with usury. One may say in passing that not only had the original transaction been tainted with usury, but usury had been in the subsequent transaction.

In other words, in the three notes and mortgage that had later been given to the Bittners there was usury, and counsel for the Bittners agreed that that should be deducted from the face of the claim, so probably that matter is not in dispute, but the Bittners claim that, so far as the original transaction is concerned, it had been settled and paid by the substitution of the new mortgage and notes; that to all intents and purposes the old mortgage had been paid, so Jones could not raise the defense of usury to the original transaction. But that was not the view that the common pleas court took of it, nor is it the view that my associates take of it. I cannot agree with the view of my associates, however,

and therefore feel it my duty to dissent and to put my views in a proper light.

Now it is admitted that, had Jones paid the money at the time of the waiver, it would have been irrevocable and he could not have afterwards recovered it; but Jones says that, if this usury was not carried into the new transaction, it must have been proved by the Bittners that there was an agreement that the usury had been properly disposed of, and that it was agreed that the defense of the usury should not be raised in the new transaction.

Now, let us see how that goes. If Jones had resisted at that time the payment of this note, if there had been a foreclosure at that time, and the same defense was set up as is now set up, Jones undoubtedly would have had a set-off on this note to the extent of the usury, or about $4,000.

If he wanted to do that, he could and should have exercised his right then, and that would have given the Bittners the right to say, "Well, in case you don't allow us the full amount of the claim to father, which has been distributed to us, we will refuse to waive our right in favor of an intervening mortgage," and they would have been within their rights, and then undoubtedly Jones could have insisted upon having a reduction made on the amount of the Bittners' mortgage, and in that event they would have a $10,000 mortgage which was inferior only to a $30,000 mortgage. So by Jones not saying anything about it—of course the Bittners would not say anything about it; Jones did not say anything about it because undoubtedly then the Bittners would have refused to waive in favor of the $14,000 mortgage—the old note which was tainted with the

fraud was surrendered, and it was a new transaction based upon a consideration to waive and postpone a $14,000 mortgage, or a $10,000 mortgage, as you look at it, to an intervening mortgage of $14,000 or $15,000, making the Bittner claim inferior to a $45,000 instead of a $30,000 mortgage.

Now, if Jones had insisted upon his rights at that time, the Bittners could have gotten at least their $10,000. Now they have waived in favor of another mortgage of $14,000, and their mortgage, whether it was $10,000 or $14,000, is postponed to a $45,000 mortgage; and they may succeed in getting nothing, for by their kindness and courtesy they are probably destined to lose the entire loan. Therefore I think the situation of these parties is so changed that the original transaction has dropped out of the picture, and it is a new transaction entirely, as much so as if Jones had paid the claim and borrowed the money of a third party. In that event the usury in the original transaction could not be traced and attached to the new deal, although there is no more money loaned upon it; and for all intents and purposes, in my judgment, there was a new transaction; there was a new mortgage; there was a new consideration; there were new parties; and it was after this claim had been allowed, after the probate court had ordered a distribution of the property in kind; and it comes too late for Jones to raise the question of usury to C. C. Bittner then, or after the changed circumstances of this property by reason of the intervening mortgage.

I therefore feel that the court below was wrong, that the judgment should have been for the full amount of the note, less the usury that had been par-

200

ticipated in by the cross-petitioners, the Bittners, in this second and subsequent transaction; and for that reason I am compelled to dissent from the judgment of the majority of the court in this case.