BALYINT ET AL., APPELLEES, *v.* ARKANSAS BEST FREIGHT SYSTEM, INC.
ET AL., APPELLANTS.

[Cite as Balyint *v.* Arkansas Best Freight System, Inc. (1985),
18 Ohio St. 3d 126.]

(No. 84-943—Decided July 10, 1985.)

*Sindell, Lowe & Guidubaldi Co., L.P.A., Steven A. Sindell* and *Mark L. Wakefield,* for appellees.

*Reminger & Reminger Co., L.P.A.,* and *Marc W. Groedel,* for appellants.

*Vorys, Sater, Seymour & Pease, Robin R. Obetz* and *Janice A. Judge,* urging reversal for *amicus curiae* Ohio Self-Insurers Association.

*Fred Wendell III,* urging affirmance for *amicus curiae* Ohio Academy of Trial Lawyers.

*Scott Baldwin,* urging affirmance for *amicus curiae* Association of Trial Lawyers of America.

*Jaffy, Livorno, Kaufmann & Arnett Co., L.P.A., Stewart R. Jaffy* and

*Henry A. Arnett,* urging affirmance for *amicus curiae* District 27, United Steelworkers of America, AFL-CIO.

CELEBREZZE, C.J. The issue presented by this appeal is whether a self-insured employer is answerable in damages for intentionally and wrongfully terminating workers' compensation payments to an injured employee. For the following reasons, we hold that appellees have stated a viable cause of action and that the complaint should not have been dismissed.

In *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, we defined an intentional tort at paragraph one of the syllabus as follows:

"An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur."

We explained the concept of an intentional tort further in *Jones, supra,* at 95:

"'* * * [A] specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is *substantially certain,* not merely likely, to occur. It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. * * * The actor must know or believe that harm is a substantially certain consequence of his act before intent to injure will be inferred." (Emphasis *sic.*)

Under the *Jones* standard, there can be no serious question that appellees' complaint sufficiently states a cause of action for an intentional tort. As this court stated in *Border City S. & L. Assn.* v. *Moan* (1984), 15 Ohio St. 3d 65, 66, quoting the syllabus of *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.3d 223]:

"It is well-established that a court may not dismiss a complaint for failure to state a claim upon which relief can be granted unless it appears 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.' " See, also, *Royce* v. *Smith* (1981), 68 Ohio St. 2d 106, 108 [22 O.O.3d 332]; *Blankenship* v. *Cincinnati Milacron Chemicals, supra,* at 610-611; *Dickerhoof* v. *Canton* (1983), 6 Ohio St. 3d 128, 129; and Civ. R. 8(A).

In essence, appellees' complaint accuses appellants of deliberately harming appellees by unilaterally, intentionally, and unlawfully terminating workers' compensation payments. Such allegations fall within the scope of an intentional tort announced in *Jones.* Appellees have sufficiently alleged an act — termination of payments — which purportedly resulted in injuries that were either intended or substantially likely to occur.

With respect to the ability of an employee to maintain an action for an intentional tort against his employer, we held in *Blankenship* v. *Cincinnati Milacron Chemicals, supra,* in the syllabus:

"An employee is not precluded by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741 from enforcing his common law remedies against his employer for an intentional tort."

Thus, in light of our holding in *Blankenship, supra,* and contrary to the argument advanced by appellants, neither Section 35, Article II nor R.C. 4123.74 or 4123.741 constitutes any impediment to the maintenance of this action for intentional tort by appellees against appellants.[1]

Appellants argue further that appellees' action is barred for failure to bring the action within the one hundred eighty-day period set forth in R.C. 4123.90. That section provides in part:

"No employer shall discharge, demote, reassign, or take any punitive action against any employee because such employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code, plus reasonable attorney fees. Such action shall be forever barred unless filed within one hundred eighty days immediately following such discharge, demotion, reassignment, or punitive action taken, and no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following such discharge, demotion, reassignment, or punitive action taken."

It is true that appellees did not file their complaint within the statute of limitations prescribed by R.C. 4123.90. Nonetheless, we hold that relief under R.C. 4123.90 is not an exclusive remedy and that appellees are not confined to proceeding solely under R.C. 4123.90.

It was stated in *Feuchter* v. *Keyl* (1891), 48 Ohio St. 357, at paragraph one of the syllabus:

"A new remedy provided by statute for an existing right, where it neither denies an existing remedy nor is incompatible with its continued

---

[1] Application of *Blankenship* to the instant case should not be read as extending that decision beyond its original scope or intention. The thrust of *Blankenship* was that "an employer's intentional conduct does not arise out of employment * * *." *Id.* at 613. We also stated in *Blankenship, supra,* at 613, fn. 8: "An intentional tort, then, is clearly not an 'injury' arising out of the course of employment."

That being the case, the allegations of intentional tortious conduct contained in the instant complaint do not, in a legal sense, arise out of the course of the employment of appellee George Balyint.

existence, should be regarded as cumulative, and the person seeking redress may adopt and pursue either remedy at his option."

Later, in *Lyons* v. *American Legion Post No. 650 Realty Co., Inc.* (1961), 172 Ohio St. 331 [16 O.O.2d 113], this court held at paragraph three of the syllabus:

"Where a statute gives a new remedy and does not in terms impair or deny a remedy already recognized by law, such statutory remedy is merely cumulative, and either the new or the old remedy may be employed at the option of the party seeking redress."

See, also, *Fletcher* v. *Coney Island, Inc.* (1956), 165 Ohio St. 150, 154-155 [59 O.O. 212]; *Phillips Sheet & Tin Plate Co.* v. *Griffith* (1918), 98 Ohio St. 73, 75; and *Zanesville* v. *Fannan* (1895), 53 Ohio St. 605, at paragraph two of the syllabus.

In our view, the remedy provided in R.C. 4123.90 is simply a statutory remedy to enforce an existing right. Appellants have not seriously argued, as they must to prevail on this issue, that prior to the enactment of R.C. 4123.90 an employer had a virtual license to take punitive action against an employee for pursuing a workers' compensation claim. Thus, to the extent that appellees' present common-law action overlaps a claim under R.C. 4123.90, appellees are free to select the remedy best calculated to afford the greatest recovery.[2] The expiration of the statute of limitations set forth in R.C. 4123.90 is, therefore, inconsequential.

By its terms, R.C. 4123.90 does not make the remedy provided therein an exclusive one. Further, R.C. 4123.90 only allows relief in the form of reinstatement with back pay and lost wages. Consequently, even though appellants' actions against appellees, if true, may be characterized as "punitive," it is not difficult to comprehend appellees' choice of pursuing a common-law remedy — under which full recovery is possible — as opposed to the limited remedy provided by R.C. 4123.90 — under which full and effective compensation for the injuries alleged to have been inflicted could not be attained.

Accordingly, we hold that an employee of a self-insured employer may maintain a cause of action against the employer for the intentional and wrongful termination of workers' compensation payments. The judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

C. BROWN, J., concurs and concurs separately.

SWEENEY and DOUGLAS, JJ., concur separately in the syllabus and judgment only.

LOCHER, HOLMES and WRIGHT, JJ., separately dissent.

---

[2] See 1 Ohio Jurisprudence 3d (1977) 404-405, Actions, Section 42.

CLIFFORD F. BROWN, J., concurring. I concur wholeheartedly with the excellent analysis advanced in today's majority opinion. To refuse to recognize a common-law action for intentional, unauthorized withholding of lawfully awarded workers' compensation benefits would be tantamount to promoting such practices. Moreover, I laud the majority's conclusion that R.C. 4123.90 is not the exclusive remedy for such wrongdoing. The spirit of both *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], and *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, indicates that the immunity provided by R.C. 4123.74 will not shield employers from common-law damage actions for intentional misconduct against employees, whatever form that misconduct may take.

As in *Blankenship, supra,* in this case we must decide whether the complaint alleges a claim for relief for intentional tort sufficient to withstand a Civ. R. 12(B) motion to dismiss. The complaint here, *inter alia,* alleges that defendants arbitrarily, willfully and maliciously discontinued weekly compensation payments to plaintiff, never seeking an order from the Industrial Commission authorizing such termination of compensation benefits.

The complaint, as detailed in the majority opinion, falls squarely within the language of the syllabus in *Blankenship, supra,* which states:

"An employee is not precluded by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741 from enforcing his common law remedies against his employer for an intentional tort."

It also falls squarely within paragraph one of the syllabus of *Jones* v. *VIP Development, supra,* quoted in the majority opinion as follows:

"An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur."

Nowhere in the syllabus or in the opinion in *Blankenship, supra,* is there any suggestion that civil liability of employers for intentional torts committed against their employees is confined solely to injuries "in the workplace," contrary to the assertion in the concurring opinion of Justice Douglas. Even though in *Blankenship, supra,* there is a factual difference in that the employer intentionally exposed employees to dangerous chemicals and that this occurred during the course of the employment relationship, logic and justice demand application of the same legal principle found in *Blankenship, supra,* and *Jones, supra,* to determine the sufficiency of the intentional tort alleged here in the Balyints' complaint. An intentional tort is an intentional tort. The same legal principle should apply whether it involves an employer intentionally exposing its employees to dangerous chemicals or fumes as in *Blankenship, supra,* or intentionally and maliciously depriving employees of their clear right to compensation benefits as here in *Balyint.* Petty factual differences between *Blankenship* and *Jones,* as contrasted with this *Balyint* case, do not justify different standards of legal liability relative to the intentional tort theory.

Therefore, it is crystal clear that this *Balyint* case does come within the *Blankenship* holding and does not extend *Blankenship* beyond its original scope and intention. Recognizing that the Balyints' complaint states a sufficient claim for relief for an intentional tort does not extend *Blankenship* to mean that it permits "every employee to transfer every arguable claim for relief into a lawsuit by simply reciting the magic words 'intentional tort.'" Nowhere in the majority opinion of Chief Justice Celebrezze in this *Balyint* case is there any statement giving rise to any inference or hint so ludicrous.

The liability to an employee of an employer for his intentional torts in *Blankenship, supra,* was not intended that it be "limited to injuries occurring in a deadly work environment," as suggested by Justice Wright. This is apparent from the opinion in *Blankenship, supra,* at 612-613 as follows:

"* * * The General Assembly, however, in enacting R.C. 4123.95, established a rule of construction which is clearly of assistance in determining the scope of employer immunity. This section provides that:

" 'Sections 4123.01 to 4123.94, inclusive, of the Revised Code, shall be liberally construed in favor of employees and the dependents of deceased employees.'

"It is with this requirement in mind that we address the language in R.C. 4123.74. The emphasized language in R.C. 4123.74 quoted above, as was noted in *Delamotte* v. *Midland Ross* (1978), 64 Ohio App. 2d 159, 161 [18 O.O.3d 167], '* * * clearly limits the categories of injuries for which the employer is exempt from civil liability.' By designating as compensable only those injuries '* * * received or contracted * * * in the course of or arising out of * * * employment * * *,' the General Assembly has expressly limited the scope of compensability. In so doing, the General Assembly surely did not intend to remove all remedies from the employee whose injury is not compensable under the Act. And, by its use of this phrase, the General Assembly has seemingly allowed the judiciary the freedom to determine what risks are incidental to employment in light of the humanitarian purposes which underlie the Act.

"In this regard, this court further agrees with the *Delamotte* court that where an employee asserts in his complaint a claim for damages based on an intentional tort, '* * * the substance of the claim is not an "injury * * * received or contracted by any employee in the course of or arising out of his employment" within the meaning of R.C. 4123.74 * * *.' *Id.* No reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment. Since an employer's intentional conduct does not arise out of employment, R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages. * * *"

This language in *Blankenship* is not novel or revolutionary. *Blanken-*

*ship* cites and quotes with full approval from the well-articulated opinion of the court of appeals in *Delamotte* v. *Midland Ross* (1978), 64 Ohio App. 2d 159 [18 O.O.3d 117], where with unassailable logic that court held:

"1. An employee's remedy under the Workers' Compensation Act is not exclusive, and he may resort to a civil action in tort when he has been injured by an employer's intentional or malicious tort.

"2. R.C. 4123.74 does not exempt an employer from civil liability for fraud when the employer intentionally withholds from an employee information, known to the employer as a result of physical examinations of the employee over a period of 13 years, concerning the employee's progressive condition of pneumoconiosis."

In *Delamotte, supra,* the employer knew of X-ray findings covering more than thirteen years revealing a silicosis condition of plaintiff, but fraudulently and maliciously conspired not to inform plaintiff of that condition, causing him to remain in a working environment which prevented the condition from healing. This tort sounding in fraud is sufficiently analogous to the willful and malicious conduct of the employer here in *Balyint* to require application of the *Blankenship, Jones,* and *Delamotte* principle of civil liability of the employer to his employee. Facts among two or more cases need not be identical to warrant application of the same rationale and legal principles. One can almost always find factual differences between any two cases.

On the other hand I can concur with the conclusion of Justice Douglas that pursuant to our recent decision in *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, as applied in this case, an employee may maintain a claim for relief against his self-insured employer for the employer's failure to act in good faith in the handling and payment of the claim of its employees. *Suver* v. *Personal Service Ins. Co.* (1984), 11 Ohio St. 3d 6, and *Coleman* v. *American Universal Ins. Co.* (1979), 86 Wis. 2d 615, 273 N.W. 2d 220. Justices Wright and Locher in their separate dissenting opinions also appear willing to accept application of this principle to the Balyints' claim.

It is my view that both the *Blankenship* intentional tort principle articulated by Chief Justice Celebrezze and the *Hoskins* bad-faith refusal to pay the compensation claim of its employee, explained by Justice Douglas, support affirmance of the judgment of the court of appeals.

DOUGLAS, J., concurring. I concur in today's judgment but only so that a majority can be forged to affirm the judgment of the court of appeals in reversing the judgment of the trial court and remanding the cause to the trial court for further proceedings.

While I concur in the judgment of the majority, I do not agree with the analysis used to arrive at the decision rendered. In *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], this court held that employers are not immune from civil liability for inten-

tional torts committed against employees in the workplace. In *Blankenship* it was alleged in the complaint that the employer intentionally exposed its employees to dangerous chemicals at "Cincinnati Milacron Chemicals, Inc.'s, Reading Plant Facility." Therefore, it is clear that the injury alleged in *Blankenship* occurred during the course of an employment relationship. Conversely, in the case now before us, the claimed injury was distinct in time and place from the original on-the-job physical injury which was the subject of appellees' claim under the Workers' Compensation Act. The employer's alleged wrongful conduct and the injury now claimed as resulting therefrom, is the suspension, by the employer, of workers' compensation benefits — an act that did not occur at the workplace or during the course of the employment relationship. Thus appellees' claim is for a second and separate injury resulting from the alleged intentional acts of appellant-employer.

When this distinction is made, it should be clear that this case does not come within the *Blankenship* holding. The majority opinion extends *Blankenship* beyond its original scope and intention, thereby confirming the worst fears of those who found its thrust to be repugnant. I do not believe that *Blankenship* was intended to have the far-reaching application promulgated by the Chief Justice in today's opinion. *Blankenship* was not meant to permit every employee to transform every arguable claim for relief into a lawsuit by simply reciting the magic words "intentional tort."

Rather than expand *Blankenship,* I would hold that once an employer, self-insured under the Workers' Compensation Act, certifies an employee's claim (as was done here) for workers' compensation benefits, the responsibility of the employer becomes that of an insurer and the relationship between the employer and its employee is one of insurer and insured. I would then hold, pursuant to our recent decision in *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, that the insured-employee may maintain a claim for relief against the insurer-employer for the latter's failure to act in good faith in the handling and payment of the claims of its insured-employee. See, also, *Suver* v. *Personal Service Ins. Co.* (1984), 11 Ohio St. 3d 6; *Coleman* v. *American Universal Ins. Co.* (1979), 86 Wis. 2d 615, 273 N.W. 2d 220.

I also do not agree with the treatment of R.C. 4123.90 as set forth by the majority. Suffice to say that if the claim made by appellees is not one arising out of the employment relationship in the workplace, then R.C. 4123.90 has no application and the need to rationalize it away is obviated.

Accordingly, for the foregoing reasons, I concur in the syllabus and judgment of the majority in affirming the judgment of the court of appeals in remanding the cause to the trial court for further proceedings.

SWEENEY, J., concurs in the foregoing concurring opinion.

LOCHER, J., dissenting. This is not a *Blankenship* v. *Cincinnati Milacron Chemicals* [(1982), 69 Ohio St. 2d 608 (23 O.O.3d 504)] case. This

is not a *Jones* v. *VIP Development Co.* [(1984), 15 Ohio St. 3d 90] case. This is not a workers' compensation case. Accordingly, R.C. 4123.90 is also inapplicable to the facts at bar.

Simply stated, the employer herein allegedly failed to comply with a legal duty by wrongfully withholding funds. The consideration that these funds were owed pursuant to a workers' compensation claim makes no greater difference than had they been due and owing from a conventional contract claim.

With reference to workers' compensation statutes, R.C. 4123.90 is, on its facts, only applicable to those instances where an employer *retaliates against* employees for availing themselves of workers' compensation benefits. In the case *sub judice* there is absolutely no evidence to suggest the withholding of monies was retaliatory for the filing for or taking advantage of workers' compensation benefits. Instead, the employer acted *after* the award had been made and *after* monies, in part, had already been disbursed. There was unquestionably a statutory duty on the self-insured employer to act in good faith in the handling and payment of the claims of its insured employee. This is not, however, pursuant to *Blankenship* v. *Cincinnati Milacron Chemicals* any more than it would be pursuant to *Marbury* v. *Madison* (1803), 5 U.S. (1 Cranch) 137. The relationship was not based on an employer-employee situation, but clearly on an insured-insurer basis. The problem is therefore easily resolved through established case law, specifically *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272. In *Hoskins* this court held the insured must be able to show bad faith on the part of the insurer to recover damages. In the event actual malice, fraud or insult can be shown, punitive damages may be recovered.

Regardless of whether one agrees or disagrees with *Blankenship* and its progeny, it is inconsistent for this court, five of whose present members substantially concurred in the *Hoskins* syllabus, to now ignore *Hoskins* in lieu of some nebulous *Blankenship* rationale when in this case there is no workers' compensation issue.

I would therefore remand this cause for the trial court to properly characterize the legal relationship between the parties herein as one between an insured and insurer and make a determination on that basis. The applicable standards of proof to make such determination were fully set forth in *Hoskins* and were unanimously agreed to by this court. Accordingly, I dissent.

HOLMES, J., dissenting. I strongly dissent herein based on the commentary set forth in my dissenting opinions in *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608, 621 [23 O.O.3d 504]; *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 103; and *Bradfield* v. *Stop-N-Go Foods, Inc.* (1985), 17 Ohio St. 3d 58.

A further reason for my dissent is that appellees' sole remedy lies within R.C. 4123.90. Due to their failure to timely bring this action within the one-hundred-eighty-day period as provided in that provision, the trial

court was correct in dismissing appellees' complaint. See *Greenwalt* v. *Goodyear Tire & Rubber Co.* (1955), 164 Ohio St. 1 [57 O.O. 57].

WRIGHT, J., dissenting. History will not commend today's decision as the result achieved is contrary to both precedent and common sense.

Initially, I feel someone should discuss the obvious policy concerns raised by the opinion authored by the Chief Justice. Every member of this court realizes that we live in an industrial state. Likewise, every member of the court knows that to survive as an industrial state we must continue to offer a legal framework that is fair both to the working person *and* to his employer. Despite this avowed recognition, the lead opinion continues to articulate and *expand* upon a shortsighted legal doctrine which inures to the immediate benefit of a very narrow class of litigants. This doctrine provides a blueprint for conflict between management and labor. It will lead inevitably to the disinclination of new industry to locate in this state, further shrinkage of our present industrial complex, and resultant economic hardship for a broad class of working people.

The lead opinion contends that its decision is merely the logical extension of *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504]. The *Blankenship* decision, despite the legal furor it has created, is in truth not a revolutionary decision. *Blankenship* stands for the proposition that if an employer purposely creates a working environment which causes injury or death to his employee, the employee or his estate may resort to the courts for redress unencumbered by the workers' compensation laws. Although I respect the formalistic view that the Ohio Constitution precludes a cause of action such as that allowed in *Blankenship,* I am nevertheless inclined to accept the basic premise of that case *so long as it is properly limited to injuries occurring in a deadly work environment.*

The subsequent application and extension of *Blankenship* has been quite a different matter. The present case, like *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, is nothing more than an illegitimate progeny of *Blankenship.* In *Jones* this court, while proclaiming its adherence to *Blankenship,* created dual recovery for an employee by holding at 90 that "[t]he receipt of workers' compensation benefits does not preclude an employee or his representative from pursuing a common-law action for damages against his employer for an intentional tort." Nowhere in *Blankenship* is such an enhanced recovery envisioned. I agree completely with the dissenters in *Jones* that this result is directly at odds with the specific language of Section 35, Article II of the Ohio Constitution.

Today, the lead opinion has extended *Blankenship* beyond its illogical application in *Jones.* This case involves a simple dispute about money. Appellant Arkansas Best initially certified appellee George Balyint's workers' compensation claim to the Industrial Commission and commenced the payment of benefits. These payments were later suspended by

the appellant because the appellee failed to provide required medical reports. Appellees claimed that the appellant wrongfully terminated the benefits. Mr. Balyint *and* his wife then brought this action for compensatory and punitive damages.

The matter proceeded to the trial court and was dismissed pursuant to Civ. R. 12(B)(6) due to the appellees' failure to timely bring the action within the one-hundred-eighty-day period provided for in R.C. 4123.90. For the sake of discussion, I will concede that the actions of the appellant may not have been proper. However, when all is said and done, we are merely presented with a contractual dispute involving the alleged wrongful withholding of money. It is well-established in this state, and in our sister jurisdictions, that a depositor, creditor, or lender is limited to a simple action for money, plus interest and costs, when repayment of money is wrongfully withheld.

This case also could be treated as an insurance case and decided accordingly. However, the lead opinion has abandoned the common law as it relates to either an insurance claim or a claim for the wrongful withholding of money. Instead, the lead opinion buttresses its result by somehow extending *Blankenship* to the inapposite facts of this case. The question asks itself. What possible relation does this case have to the "deadly working environment" rationale espoused in *Blankenship* or, for that matter, *Jones*?

I believe this court should exercise some degree of self-restraint. While a judge should not refrain from applying a constitutional mandate nor retreat from risking public criticism in a righteous cause, courts should not be promiscuous in creating rights which crowd the dockets with unwarranted litigation. Stated simply, when a court fashions new law and creates new remedies for a perceived injustice, it should, at the very minimum, carefully consider the ramifications thereof. That most certainly has not occurred here.

As in certain other recent workers' compensation cases, fairness and certainty in the law have been ignored. This result can only precipitate a situation where the Ohio General Assembly will be forced to reverse our actions by legislative fiat.

In sum, the law *should* recognize the claim of an employee who is injured or deprived of his life by the intentional actions of his employer arising out of his or her working environment. The law *should not* create a cause of action in tort coupled with punitive damages for every slight arising out of the employer-employee relationship. The lead opinion comes dangerously close to this latter result. I regard the reasoning of the lead opinion and its result as an anathema and, thus, I must respectfully dissent.