Angel TORREZ, Plaintiff,

v.

DAIMLERCHRYSLER CORP.,
et al., Defendants.

No. 3:03 CV 7106.

United States District Court,
N.D.Ohio,
Western Division.

Feb. 25, 2004.

John R. Polofka, Trevor P. Van Berkom, Polofka & Van Berkom, Toledo, OH, for Angel Torrez, Plaintiff.

John T. Landwehr, Katharine T. Talbott, Carrie L. Sponseller, Eastman & Smith, Toledo, OH, for DaimelrChrysler Corp., Defendant.

Amy M. Johnston, Cardelli, Hebert, & Lanfear, Royal Oak, MI, Mark G. Cooper, Cardelli, Hebert & Lanfear, Royal Oak, MI, for ESIS, Defendant.

## ORDER

CARR, District Judge.

This is a suit under Ohio law in which the plaintiff, Angel Torrez, seeks actual and punitive damages against defendants DaimlerChrysler Corp. and ESIS, Inc. for their alleged intentional failure to perform their obligations under Ohio's Workers' Compensation law. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

Pending are defendants' separate motions for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the following reasons, defendants' motions shall be denied.

## BACKGROUND

Plaintiff worked for defendant DaimlerChrysler from 1979 until his retirement on disability in November, 2002. DaimlerChrysler is a self-insured employer under Ohio's workers' compensation law for purposes of administrating its employees' workers' compensation claims. Defendant ESIS is the third party administrator of DaimlerChrysler's workers' compensation program.

As a result of his employment with DaimlerChrysler, plaintiff developed bilateral carpal tunnel syndrome and a right shoulder injury. Plaintiff claims that the defendants deliberately mishandled his claims for workers' compensation, thereby delaying his receipt of benefits and underpaying him, in order to force him from his job. The defendants deny that any delay or underpayment was intentional, but they give no explanation for the delay and underpayment that did in fact occur.

## A. Bilateral Carpal Tunnel Syndrome

On November 14, 2000, plaintiff's counsel sent ESIS a First Report of Injury ("First Report") describing bilateral carpal tunnel syndrome. Both plaintiff and his orthopedic surgeon had signed this First Report. Several months later, on April 30, 2001, plaintiff's counsel again forwarded a First Report describing bilateral carpal tunnel syndrome to ESIS. On both occasions, ESIS did not respond to plaintiff and did not file the First Reports.

Almost one year after plaintiff's counsel sent ESIS the First Report for *bilateral* carpal tunnel syndrome, ESIS filed a First Report for *left* carpal tunnel syndrome on October 1, 2001. Neither ESIS nor DaimlerChrysler notified the Bureau of Workers' Compensation or the Industrial Commission that there was a dispute over the recognition of carpal tunnel syndrome in plaintiff's right hand.

In early 2002, plaintiff's orthopedic surgeon, Dr. Hartwig, requested authorization from defendants for surgery on plaintiff's right carpal tunnel syndrome. Neither defendant authorized the requested surgery and neither filed a First Report for right carpal tunnel syndrome.

On May 23, 2002, an Industrial Commission hearing officer allowed plaintiff's claim for right carpal tunnel syndrome and authorized the requested surgery. Following this decision, on June 5, 2002, Dr. Hartwig again sent defendants a request for approval of right carpal tunnel syndrome surgery. On June 10, 2002, DaimlerChrysler appealed the May 23 Industrial Commission order. The Industrial Commission denied that appeal on June 14, 2002. DaimlerChrysler pursued no further appeals on the right carpal tunnel surgery.

At an Industrial Commission hearing on September 9, 2002, the hearing officer not-

ed that DaimlerChrysler continued to deny payment for services requested by Dr. Hartwig despite the May 23, 2002 order authorizing right carpal tunnel syndrome surgery, which had still not been performed. The hearing officer ordered DaimlerChrysler to comply with the Industrial Commission's finding and pay for the right carpal tunnel syndrome surgery.

Dr. Hartwig would not perform surgery without written authorization from DaimlerChrysler or ESIS. On October 2, 2002, plaintiff's attorney requested a release from ESIS for right carpal tunnel syndrome surgery. ESIS approved the surgery on October 11, 2002, but DaimlerChrysler verbally withdrew this authorization at an Industrial Commission hearing on October 22, 2002. Thereafter, in a letter to Dr. Hartwig dated October 31, 2002, ESIS formally withdrew authorization for the surgery. Consequently, Dr. Hartwig cancelled plaintiff's right carpal tunnel syndrome surgery, which had been scheduled for January, 2003.

Plaintiff alleges he lost his job due to the delay in treatment caused by defendants' actions and the resulting worsening of his condition. Plaintiff further claims a loss of income under the premise that he could have returned to work sooner had defendants promptly authorized the carpal tunnel surgery. Plaintiff argues that his workers' compensation payments are less than the income he could earn by working.

## B. Compensation Paid at Improper, Lower Rate

After recognizing plaintiff's left carpal tunnel syndrome, defendants compensated plaintiff for the occupational disease at the 1998 rate rather than the appropriate 2000 rate. On April 27, 2001 and April 30, 2001, plaintiff's counsel notified ESIS of the improper rate of compensation. On September 9, 2002, an Industrial Commission hearing officer ordered DaimlerChrysler to pay plaintiff at the correct 2000 rate.

Plaintiff's counsel contacted ESIS regarding the Industrial Commission order and requested temporary total disability on both September 17, 2002 and October 2, 2002. Plaintiff eventually received compensation for back temporary total disability on December 11, 2002. Plaintiff claims that defendants' failure to pay him at the correct disability rate caused him financial injury.

## C. Right Shoulder Injury

Plaintiff informed defendants of his right shoulder injury on April 30, 2001. As a result of this injury, the Industrial Commission awarded plaintiff eight percent (8%) permanent partial disability on January 2, 2003. Defendants did not appeal this award, but did not pay the award until March 7, 2003.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. "It is

insufficient simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings and present some type of evidentiary material in support of its position." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs. Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

 Plaintiff claims that defendants intentionally mishandled his workers' compensation claims. In *Balyint v. Arkansas Best Freight System, Inc.*, 18 Ohio St.3d 126, 130, 480 N.E.2d 417 (1985), the Ohio Supreme Court recognized a cause of action brought by an employee against a self-insured employer for the employer's intentional and wrongful termination of workers' compensation payments. Later, in *Vandemark v. Southland Corp.*, 38 Ohio St.3d 1, 7, 525 N.E.2d 1374 (1988), the Court recognized a cause of action in tort for a self-insured employer's failure to process a workers' compensation claim. *See also Urey v. Alside, Inc.*, 64 Ohio App.3d 619, 620, 582 N.E.2d 628 (1989) (recognizing a cause of action for a self-insured

employer's intentional failure to pay compensation to an employee as ordered by the Industrial Commission).

 An intentional tort is an act committed with the intent to injure another or with the belief that injury to another is a substantially certain consequence of the act. *Balyint*, 18 Ohio St.3d at 128, 480 N.E.2d 417 (quoting *Jones v. VIP Development*, 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984)). A common-law cause of action for intentional tort "requires proof that the employer intentionally failed to follow the law or violated a legal duty imposed upon it in the handling of its employee's claim." *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 94, 652 N.E.2d 671 (1995).

The intentional tort at issue in the present case—mishandling plaintiff's workers' compensation claims—is outside the scope of the Ohio workers' compensation statutes. The injury is not a work-related physical injury. Instead, the injury is financial, resulting from the employer's alleged intentional failure properly to process plaintiff's claims. *See Vandemark*, 38 Ohio St.3d at 4, 525 N.E.2d 1374.

 The pleadings, depositions and affidavits in the present case present a genuine issue of material fact as to defendants' intent in their handling of plaintiff's workers' compensation claims. Plaintiff's description of defendants' course of dealing regarding his workers' compensation claims gives rise to a prima facie case regarding defendants' intent. *See In re DWE Screw Products, Inc.*, 157 B.R. 326, 330 (Bankr.N.D.Ohio 1993) (noting that the intent of the parties is often "so convoluted that the court must infer or presume intent from the parties' course of dealings"); *Music v. Sash & Storm*, No. 1–01–142, 2002 WL 468582 at *2 (Ohio Ct.App. Mar.28, 2002) (holding that courts may consider the parties' course of dealing in order to determine the intent of the par-

ties); *Bittner v. Jones,* 37 Ohio App. 190, 194, 174 N.E. 609 (1930) (holding that the parties' course of dealing revealed an intention to violate the law).

Plaintiff has presented evidence of defendants' repeated failure to acknowledge plaintiff's bilateral carpal tunnel condition despite numerous attempts by the plaintiff, his attorney, and his orthopedic surgeon to have defendants acknowledge the bilateral nature of his condition. Furthermore, plaintiff has presented evidence of defendants' reluctance to follow Industrial Commission orders regarding plaintiff's carpal tunnel condition and disability payments. Indeed, the Industrial Commission independently noted DaimlerChrysler's continued unwillingness to pay for plaintiff's carpal tunnel surgery, even after being ordered to do so, thereby causing the Commissioner to issue a second order to defendants to pay for the surgery.

■ An employer who disregards the requirements of a district hearing officer's order does so at its peril. *See Haffner v. Conrad,* 122 Ohio App.3d 516, 521, 702 N.E.2d 160 (1997) (citing *Balyint,* 18 Ohio St.3d 126, 480 N.E.2d 417; *Kokitka,* 73 Ohio St.3d 89, 652 N.E.2d 671). If an employer is ordered to pay a workers' compensation claim, refuses to do so, and loses its appeal of the Industrial Commission's decision, then the employer may be liable for compensatory and punitive damages resulting from a claim of intentional tort. *Id.* In the instant case, plaintiff has presented evidence that defendants repeatedly disregarded the Industrial Commission hearing officer's order that defendants pay for plaintiff's right carpal tunnel syndrome surgery.

Defendants fail to explain their actions. Rather, they merely contend that their actions were not intentional and, therefore, are not actionable. In support of their motions for summary judgments, defendants point to plaintiff's testimony that he lacks personal knowledge as to whether DaimlerChrysler and ESIS acted intentionally. In effect, defendants assert that they cannot be found to have acted intentionally because they never told plaintiff that they were doing so.

Actions, though, can speak louder than words. In this case, a jury, after learning what the defendants did not do, and hearing no explanation for their conduct, could conclude that defendants intentionally deprived plaintiff of his workers' compensation benefits, deprived him of his job, and caused him financial injury. Thus, defendants' motions for summary judgment must be denied.

### CONCLUSION

It is, therefore,

ORDERED THAT defendants' motions for summary judgment be, and they hereby are, denied. The settlement conference scheduled for March 1, 2004 is vacated and rescheduled for March 8, 2004 at 11:15 a.m.

So ordered.