DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Technical Construction Specialties, Inc. has appealed from the judgment of the Summit County Court of Common Pleas that found in favor of Plaintiff-Appellee Adam Coon on his R.C. 4123.90 claim and his wrongful termination claim in violation of public policy. This Court reverses.
 I {¶ 2} Plaintiff-Appellee Adam Coon ("Coon") filed suit against his former employer Defendant-Appellant Technical Construction Specialties, Inc. ("Specialties") alleging workers' compensation retaliation and wrongful termination in violation of public policy. The matter proceeded to trial and a jury found in favor of Coon. The jury awarded him $73,871 in damages and found he was entitled to attorney's fees.[1] After Coon's application for attorney fees, briefing by the parties, and a hearing, the trial court awarded Coon's attorneys $54,500.50 in attorneys' fees.
 {¶ 3} Specialties has timely appealed, asserting four assignments of error. For ease of discussion, we first address Specialties' second and third assignments of error.
 II Assignment of Error Number Two
"The trial court erred when it recognized a public policy claim based on R.C. 4123.90."
 {¶ 4} In its second assignment of error, Specialties has argued that the trial court erred in denying its motion for judgment on the pleadings regarding Coon's public policy violation claim. Specifically, Specialties has argued that the trial court erred in allowing the claim because R.C. 4123.90
provides an adequate statutory remedy. We agree.
 {¶ 5} A Civ.R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted, and the same standard of review is applied to both motions. Gawloskiv. Miller Brewing Co. (1994), 96 Ohio App.3d 160, 163. The trial court's inquiry is restricted to the material allegations in the pleadings. Id. Furthermore, the trial court must accept material allegations in the pleadings and all reasonable inferences as true. Id. This Court reviews such motions under the de novo standard of review. Hunt v. Marksman Prod. (1995),101 Ohio App.3d 760, 762. We will not reverse a trial court's denial of a Civ.R. 12(C) motion unless when all the factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief. State ex rel. Hanson v. GuernseyCty. Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548.
 {¶ 6} Specialties has alleged that it was entitled to a judgment on the pleadings because a public policy cause of action under R.C. 4123.90 is not a viable claim. Coon has responded that he was not limited to his statutory claim and his public policy claim was properly allowed.
 {¶ 7} Pursuant to R.C. 4123.90:
"No employer shall discharge * * * or take any punitive action against any employee because the employee filed a claim * * * under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."
 {¶ 8} There is a long judicial history on the issue of statutory causes of action and public policy causes of action based on statutes. Public policy causes of action under R.C.4123.90 have also received judicial attention. Accordingly, to properly evaluate Specialties' assignment of error, this Court must review the legal history concerning statutory public policy claims in general and specifically, R.C. 4123.90 public policy claims.
 {¶ 9} In 1985, the Ohio Supreme Court addressed the issue of R.C. 4123.90 as an exclusive remedy. Balyint v. Arkansas BestFreight System, Inc. (1985), 18 Ohio St.3d 126. In Balyint an employee sued his employer after the employer stopped making the employee's workers' compensation payments. The employee claimed the employer intentionally and wrongfully terminated his workers' compensation payments. The employer argued that the employee had no claim because R.C. 4123.90 was the employee's exclusive remedy and the employee could not file a claim under that statute because the filing deadline had passed. The Balyint Court found that R.C. 4123.90 was not an exclusive remedy and that the employee was not confined to the statute because he was "free to select the remedy best calculated to afford the greatest recovery." Balyint, 18 Ohio St.3d at 130. In a limiting holding, the court "h[e]ld that an employee of a self-insured employer may maintain a cause of action against the employer for the intentional and wrongful termination of workers' compensation payments." Id. at 130.
 {¶ 10} In Greeley v. Miami Valley Maint. Constrs., Inc.
(1990), 49 Ohio St.3d 228, the Ohio Supreme Court recognized a public policy exception to the employment at will doctrine and held that an employee could maintain a private cause of action against an employer when the employee is discharged or disciplined for a reason which is prohibited by statute. Id. at paragraph one of the syllabus. The employee in Greeley was terminated when his employer received notice of a wage withholding order; the wage withholding statute set forth a fine against the employer for not withholding wages, but did not provide a private cause of action for the employee. The Greeley
Court held that "[i]n Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort." Id. at paragraph three of the syllabus. While this case dealt with a statutory based claim, the court found that a private cause of action for wrongful discharge need not be premised upon a violation of a specific statute. Id. at 235.
 {¶ 11} The Ohio Supreme Court explained Greeley in Tullohv. Goodyear Atomic Corp. (1992), 62 Ohio St.3d 541, overruled byPainter v. Graley (1994), 70 Ohio St.3d 377. The Tulloh Court limited its previous exception to the employee at will doctrine and held that "[a]bsent statutory authority, there is no common-law basis in tort for a wrongful discharge claim."Tulloh, 62 Ohio St.3d at 546.
 {¶ 12} The following year, this Court addressed the issue of statutory causes of action, specifically, R.C. 4123.90, and the potential for public policy claims. Anderson v. Lorain Cty.Title Co. (1993), 88 Ohio App.3d 367. We held that R.C. 4123.90
provides an employee a civil remedy for its violation and that no separate public policy cause of action was allowed for said violation because R.C. 4123.90 "provides an effective remedy for violation of public policy favoring workers' compensation remedies." Anderson, 88 Ohio App.3d at 373. This Court analyzed the Ohio Supreme Court decisions of Greeley, Tulloh, andProvens v. Stark Cty. Bd. of Mental Retardation DevelopmentalDisabilities (1992), 64 Ohio St.3d 252, and found that a public policy claim is available only when a violated statute does not provide an effective remedy. Anderson, 88 Ohio App.3d at 373. Accordingly, we determined that when an employee files a claim under R.C. 4123.90, he is prohibited from filing a separate public policy cause of action. Id.
 {¶ 13} In Painter v. Graley (1994), 70 Ohio St.3d 377, the Ohio Supreme Court revisited its exception to the employment at will doctrine. The Painter Court found that Tulloh
oversimplified the public policy exception to Ohio's employment at will common law doctrine and overruled the Tulloh decision.Painter, 70 Ohio St.3d at paragraph three of the syllabus. The court re-affirmed Greeley and held "that an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a `sufficiently clear public policy.'" Id. at 384.
 {¶ 14} Three years later, the Ohio Supreme Court again addressed the issue of public policy claims based on statutes.Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134. InKulch, an employee alleged he was wrongfully discharged for reporting violations to the Occupational Safety and Health Administration. The Whistleblower Statute in the case did not provide the employee a private cause of action against his employer. The Kulch Court found that the employee could bring a public policy claim under the Whistleblower Statute because the employee was not provided with adequate civil remedies. Kulch,78 Ohio St.3d at 155. The court held that
"an at-will employee who is discharged or disciplined for filing a complaint with OSHA concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy pursuant to Greeley[.]" Id. at 162.
The Kulch Court also determined that a plaintiff could maintain a statutory claim and a common law public policy claim, but could not receive double recovery. Id.
 {¶ 15} In Boyd v. Winton Hills Medical and Health Center,Inc. (1999), 133 Ohio App.3d 150, the First District Court of Appeals allowed a plaintiff to bring a public policy cause of action based on R.C. 4123.90. Relying on Kulch, the court found that the plaintiff was entitled to more relief than was provided in the statute. Boyd, 133 Ohio App.3d at 161. The court cited punitive damages and a jury trial as potential additional remedies under the public policy cause of action. Id. at 162.
 {¶ 16} In 2002, the Ohio Supreme Court was again presented with the issue of statutory claims and public policy claims.Wiles v. Medina Auto Parts, 96 Ohio St.3d 240, 2002-Ohio-3994. In Wiles, an employee alleged that his employer constructively and wrongfully discharged him in retaliation for the exercise of his rights under the Family and Medical Leave Act ("FMLA"). Rather than bring the statutory claim, the employee filed suit under the common law, alleging that his discharge violated public policy. After reviewing the remedies under the FMLA as well as a public policy cause of action, the Ohio Supreme Court determined that the public policy claim was "unnecessary to vindicate the policy goals of the FMLA" and declined to recognize such a claim. Id. at ¶ 1.
 {¶ 17} In determining whether Wiles could maintain a public policy claim, the court relied on the standard established inCollins v. Rizkana (1995), 73 Ohio St.3d 65. In Collins, the Ohio Supreme Court adopted a standard for Ohio common law claims for wrongful termination in violation of public policy. Id. at 69-70. To establish a public policy wrongful termination claim the following elements must be present:
"1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
"2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
"3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
"4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification
element).'" (Emphasis sic.) (Citations and quotations omitted). Id. Collins also explained that the clarity and jeopardy elements, "both of which involve relatively pure law and policy questions, are questions of law to be determined by the court." (Citations and quotations omitted.) Id. at 70. The factual elements of causation and overriding justification are to be decided by a jury. Id.
 {¶ 18} In applying the Collins standard, the Wiles Court found that the alleged conduct by Medina Auto Parts violated a clear public policy. Wiles at ¶ 13. The court then considered the jeopardy element and explained that "an analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common law wrongful discharge claim." (Citation omitted.) Id. at ¶ 15. The Court questioned whether the absence of a cognizable Greeley claim based solely on a violation of the FMLA would seriously compromise the Act's statutory objective by deterring eligible employees from exercising their substantive leave rights; the court found that the public policy claim failed on the jeopardy element. Id. at ¶ 14. Finding that the "remedial scheme [of the FMLA] provides an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation[,]" the Wiles Court cited several federal court cases that have declined to extend public policy claims due to the adequacy of statutory remedies. Id. at ¶ 17. The Wiles Court explained that:
"[T]here is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests * * * [because] the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." (Citations omitted). Id. at ¶ 15.
 {¶ 19} The Wiles Court also discussed its prior decision inKulch. The court explained that the Kulch decision allowed a public policy claim because it found that the remedies under the statute at issue, R.C. 4113.52, were inadequate. Id. at ¶ 18. "Kulch does not * * * stand for the proposition that statutory remedies are inadequate — therefore warranting a Greeley claim — when those remedies provide something less than the full panoply of relief that would be available in a tort cause of action for wrongful discharge." Id. at ¶ 20. The Wiles decision also made clear that it was the controlling authority on the public policy cause of action issue; "Kulch is not controlling authority on the question of whether the remedies provided in a statute are sufficiently comprehensive to render unnecessary the recognition of a separate common-law Greeley claim based solely on the same statute." Id. The court also pointed out that the absence of punitive damages does not render a statutory remedy inadequate because punitive damages are employed to punish the offender, not compensate the victim. Id. at ¶ 21.
 {¶ 20} The First District Court of Appeals revisited the issue of R.C. 4123.90 and public policy claims in Doss v.Hilltop Rental Co., 1st Dist. No. C0-30129, 2003-Ohio-5259, at ¶ 52. Doss relied on Boyd and Kulch when it allowed a plaintiff to bring a R.C. 4123.90 claim and a public policy claim based on R.C. 4123.90. Id. Although issued after Wiles, theDoss Court failed to address or even mention the controlling Ohio Supreme Court authority when it upheld its district's prior position.
 {¶ 21} The Tenth District Court of Appeals also allowed a plaintiff to allege a R.C. 4123.90 claim and a public policy claim based on R.C. 4123.90. Sidenstricker v. Miller PavementMaint., 158 Ohio App.3d 356, 2004-Ohio-4653. Sidenstricker
also relied on Boyd and Kulch without recognizing Wiles,
the then two-year old Ohio Supreme Court law. Id. at ¶¶ 6 and 11.
 {¶ 22} It is clear from the legal history of public policy wrongful termination causes of action that treatment of such claims has changed over time. The Ohio Supreme Court first created a wide exception to the employment at will doctrine inGreeley, but then limited the exception to statutory based public policy claims in Tulloh. It then expanded its position in Painter and explained and further expanded the exception inKulch. Then the Wiles Court limited the exception and explained that when deciding whether to allow a public policy claim for wrongful termination a court must review the adequacy of the remedies under the applicable statute. Wiles also found that a remedy is not inadequate merely because it does not allow for all avenues of recovery.
 {¶ 23} In the instant matter, Specialties has pointed toWiles to direct this Court in making its decision and Coon has asserted that Balyint is controlling. This Court finds thatBalyint is not relevant to the disposition of the instant appeal because that case was not factually a R.C. 4123.90
violation case and was pre-Greeley and subsequent case law on the issue of public policy wrongful termination claims. As noted in the Balyint dissent, there was no evidence that the employee was being discriminated against for filing a workers' compensation claim, and in fact, the employer made several payments on the claim. Balyint, 18 Ohio St.3d at 135 (Locher, J. dissenting). Moreover, we find that Balyint was de facto overruled by Wiles. Balyint found that a plaintiff should be able to sue under whichever cause of action provided the best remedy; Wiles directly contradicts such a position. Wiles
made clear that the method to determine whether a plaintiff can file statutory and public policy causes of action involves reviewing the adequacy of remedy, not ensuring the aggrieved party receives the greatest recovery. Wiles at ¶ 21. Based on the foregoing, we find that although Balyint allowed a R.C.4123.90 public policy claim, it is distinguishable from the instant matter and Wiles and its adequacy of remedy analysis is the controlling precedent.
 {¶ 24} Coon has also relied on Kulch, Boyd, andSidenstricker to establish his claim. We are not persuaded. As previously discussed, we find that Wiles limited the applicability of Kulch and that the issue of remedy adequacy is now the determining factor. We find Boyd of no influence not only because it is not binding on this Court, but also because it relies on Kulch. Boyd's finding that the employee was entitled to more relief than provided by R.C. 4123.90 directly conflicts with the more recent and authoritative finding inWiles that an aggrieved party is not automatically entitled to the remedy that provides the greatest recovery. Wiles at ¶ 21. Moreover, Boyd discussed the importance of punitive damages andWiles noted that such damages are not required to protect an aggrieved party's rights. Sidenstricker also fails to persuade this Court. As mentioned above, Sidenstricker was decided afterWiles, but failed to discuss or even cite the Ohio Supreme Court controlling case. Rather, the opinion relied on Boyd andKulch, which this Court has already found unpersuasive.
 {¶ 25} Based on the foregoing, we find that our decision inAnderson remains good law. We recognize that some of theAnderson language has been limited by subsequent Ohio Supreme Court decisions. However, our finding that R.C. 4123.90 does not provide for a public policy wrongful termination claim has not been overruled. Applying the public policy claim standard adopted in Collins and utilized in Wiles, we find that a clear public policy does exist to prevent employers from retaliating or discriminating against employees for filing workers' compensation claims.
 {¶ 26} In reviewing the jeopardy element, we find that the remedies under the FMLA and R.C. 4123.90 are similar and that as in Wiles the aggrieved party's claim fails on this element. The remedy under R.C. 4123.90, like that under the FMLA, adequately protects the public policy purpose of R.C. 4123.90. The statute promotes the same goals as a separate public policy claim and provides an employee with a "meaningful opportunity" to return to the same position he was in prior to the adverse action by the employer. See Wiles at ¶ 17. Furthermore, limiting an aggrieved party to a statutory R.C. 4123.90 claim does not "seriously compromise" the statute's objectives of preventing employers from retaliating or discriminating against employees for filing workers' compensation claims. Id. at ¶ 14. As previously discussed, the purpose of a remedy in a wrongful termination case is not the degree of monetary reward, but rather to deter the employer from violating the law and to place the employee in the position they would have been had the employer not violated the law. Based on the foregoing, we hold, as we did in Anderson,
that R.C. 4123.90 provides an effective and adequate remedy to an aggrieved party and Coon was not entitled to a separate wrongful termination public policy claim under R.C. 4123.90.
 {¶ 27} To summarize, this Court finds that while Wiles did not expressly overrule previous decisions regarding public policy wrongful termination claims, it is the controlling law on the issue. Moreover, although other appellate districts treat R.C.4123.90 public policy claims differently, our position inAnderson remains the authoritative precedent in this district.
 {¶ 28} Specialties' second assignment of error has merit.
 Assignment of Error Number Three
"The trial court erred as a matter of law to the prejudice of [specialties] when it allowed a trial by jury on [coon's] workers' compensation retaliation claim under R.C. 4123.90."
 {¶ 29} In its third assignment of error, Specialties has argued that the trial court erred in allowing Coon's retaliation claim to be heard by a jury. Specifically, Specialties has argued that R.C. 4123.90 does not permit a jury trial. We agree.
 {¶ 30} "[R]elief under R.C. 4123.90 is equitable in nature and thus, * * * there is no right to a jury trial in such an action." Rachubka v. St. Thomas Hospital Medical Center (Oct. 10, 1984), 9th Dist. No. 11596, at 5. In Rachubka, this Court followed other state courts and federal courts and found that R.C. 4123.90 is not triable as of right by a jury. Id. We also interpreted Civ.R. 39, which governs trials by jury or by the court. In cases not triable as of right by a jury, a jury trial can be held if: 1) the court upon motion or its own initiative tries an issue with an advisory jury or 2) the court, with the consent of both parties, orders a trial with a jury. Civ.R. 39(C). If the opposing party does not consent to the jury trial ordered by the trial court it must object to the jury trial in order to preserve the issue for appeal. Rachubka at 7.
 {¶ 31} A review of the record establishes that Specialties objected to the jury trial on Coon's R.C. 4123.90 claim. As such, Specialties did not consent to the jury trial. Moreover, there is no evidence or argument that the jury trial conducted below was an advisory jury. Accordingly, the standard for a jury trial on a non-triable claim has not been met. We find that the trial court improperly held a jury trial on Coon's R.C. 4123.90 claim. Specialties' third assignment of error has merit.
 Assignment of Error Number One
"The trial court erred to the prejudice of [specialties] when it permitted admission of documents submitted to the unemployment compensation review commission in violation of the absolute privilege contained in R.C. 4141.21."
 Assignment of Error Number Four
"The trial court abused its discretion to the prejudice of [specialties] when it awarded attorneys' fees in the amount of $54, 500.50."
 {¶ 32} In its first and fourth assignments of error, Specialties has argued that the trial court abused its discretion when it admitted documents that Specialties had submitted to and received from the Unemployment Compensation Review Commission and that the trial court's award of attorneys' fees was an abuse of discretion. Given this Court's resolution of Specialties' second and third assignments of error, its first and fourth assignments of error are moot, and we decline to address them. See App.R. 12(A)(1)(c).
 III {¶ 33} Specialties' second and third assignments or error are sustained. Specialties' first and fourth assignments of error are moot. The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Slaby, P.J. Moore, Concur.
[1] The jury did not award Coon punitive damages.