BOYD, Appellant,

v.

**WINTON HILLS MEDICAL AND HEALTH CENTER, INC., Appellee.**

[Cite as *Boyd v. Winton Hills Med. & Health Ctr., Inc.* (1999), 133 Ohio App.3d 150.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980355.

Decided March 5, 1999.

*Ivan L. Tamarkin,* for appellant.

*Cors & Bassett, Robert J. Hollingsworth* and *Curtis L. Cornett,* for appellee.

PAINTER, Judge.

This is a retaliatory-discharge case brought by a medical-records supervisor for a health center. The supervisor claimed that the health center terminated her after she filed a workers' compensation claim. We must now decide if she presented enough evidence of retaliation to withstand the health center's motion for summary judgment and if she should have been permitted to amend her complaint to add a common-law wrongful-discharge claim. We answer both queries in the affirmative, and reverse.

## I BACKGROUND

Plaintiff-appellant, Beverly Boyd, was the medical-records supervisor for defendant-appellee Winton Hills Medical and Health Center, Inc. ("Winton Hills"), from March 1988 through May 1996. In April 1995, she injured her knee at work and filed a workers' compensation claim. Hearings on that claim were held later that year, in either September or October. On May 1, 1996, Winton Hills eliminated the medical-records-supervisor position and, thus, Boyd's employment.

Boyd filed a lawsuit against Winton Hills. She alleged that Winton Hills had violated R.C. 4123.90, which prohibits employers from taking punitive action against employees who file workers' compensation claims. She also claimed that Winton Hills had violated Ohio's public policy by terminating her for contacting lawyers. She later filed a motion to amend her complaint to add another common-law wrongful-discharge claim based on Winton Hills's alleged violation of R.C. 4123.90, but the court denied that motion.

Winton Hills asserted that Boyd's termination had nothing to do with her workers' compensation claim or her contact with attorneys. It claimed that it had been experiencing financial problems before Boyd's termination and that the elimination of Boyd's position was merely the result of business judgment that it had exercised in attempting to save money.

The trial court granted summary judgment for Winton Hills. Boyd now appeals, asserting three assignments of error. The first assignment involves the court's denial of Boyd's motion to amend her complaint to add a new cause of action. The second and third assignments involve the court's granting of summary judgment on Boyd's R.C. 4123.90 and public-policy claims. We initially address the second and third assignments.

## II SUMMARY–JUDGMENT STANDARD

■ A summary-judgment motion shall be granted if the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion.[1] The moving party bears the initial burden of identifying the parts of the record that demonstrate the absence of a genuine issue of material fact. When the moving party discharges that burden, the nonmoving party has the reciprocal burden of producing evidence on the issues for which it will bear the burden of production at trial.[2] Appellate review of a

---

1. Civ.R. 56(C).

2. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

lower court's entry of summary judgment is *de novo*.[3]

### III    R.C. 4123.90

In her second assignment, Boyd asserts that the trial court erred in granting summary judgment on her workers' compensation retaliation claim.  We agree.

R.C. 4123.90 prohibits employers from taking punitive action against employees who file workers' compensation claims and provides:

"No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."

To prove a violation of R.C. 4123.90, the employee must set forth a prima facie case of retaliatory discharge.  The employee must show that he or she was "injured on the job, filed a claim for workers' compensation, and was discharged by that employer in contravention of R.C. 4123.90."[4]  If the employee establishes a prima facie case, then the employer must set forth a legitimate nonretaliatory reason for the discharge.[5]  Finally, if the employer provides a nonretaliatory reason, the employee must prove that the reason was pretextual.[6]  It is necessary that the employee show that he or she was retaliated against because he or she pursued workers' compensation benefits.  The burden of proving that the employer had a retaliatory motive remains at all times on the employee.[7]  The factors that a trier of fact may consider in determining whether there was retaliation include "punitive action such as bad performance reports after the * * * claim was filed, the length of time between the claim and the discharge, changes in salary level, hostile attitudes emerging, and whether legitimate reasons exist for the discharge."[8]

---

3.  *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274.

4.  *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, syllabus.

5.  *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 338, 697 N.E.2d 1080, 1083.

6.  *Id.* at 338, 697 N.E.2d at 1084.

7.  *Id.; Bea v. Revlon Realistic Professional Prods., Inc.* (Nov. 27, 1985), Hamilton App. No. C–840926, unreported, 1985 WL 8845.

8.  *Anschutz v. Dresser Indus., Inc.* (Dec. 11, 1991), Crawford App. No. 3–90–8, unreported, 1991 WL 261828.

## A.  Prima Facie Case

█ Here, Boyd raises several claims to challenge the court's granting of summary judgment.  Some of these, which we do not address, are specious.  But we hold that others have merit.  Regarding Boyd's prima facie case that Winton Hills retaliated against her for filing a workers' compensation claim, we conclude that two claims create a genuine issue of fact.

### 1.  Comments

One claim involves a comment made by Miriam Crenshaw, the executive director of Winton Hills, after another employee in the medical-records department filed a workers' compensation claim.  That other employee was Fred Williams, who filed the claim in 1994.  (Besides Williams's and Boyd's workers' compensation claims, the record does not reveal that any other employees at Winton Hills filed such claims.)  According to Boyd, after a hearing on Williams's claim, which Winton Hills opposed, Crenshaw said to Boyd, "He filed that Workman's Comp[.] claim; I want him out of here."  No disciplinary action was taken against Williams, who still works at Winton Hills.  Based on conversations that she heard between Crenshaw and Winton Hills's attorney, Boyd claims that the only reason that Williams was not terminated was because the attorney advised Crenshaw not to do so.

Winton Hills argues that Crenshaw's comment regarding Williams is irrelevant here.  Winton Hills explains that it believed that Williams had filed a false claim and that Boyd had even testified at the hearing that she believed Williams was lying about his injury.  According to Winton Hills, Crenshaw's comment should be disregarded because it occurred over a year before Boyd's termination, and it referred to Williams, not Boyd.[9]  Winton Hills claims that Crenshaw had meant that Williams should be terminated because he had filed a false claim, not because he had filed a workers' compensation claim in general.

But, viewed in the light most favorable to Boyd, Crenshaw's comment should not be disregarded.  Despite Winton Hills's argument that the comment referred to Williams's filing of a false claim, the comment itself does not make any reference to a false claim.  Rather, it refers to workers' compensation in general.  Considering that Winton Hills expressed this hostility toward Williams after he filed his claim—which apparently had been the only other such claim at Winton Hills besides Boyd's—we believe that the comment at least would permit a

---

**9.**  See *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 129, 672 N.E.2d 145, 148–149 (holding that discriminatory remarks regarding age were insufficient to create an issue of fact in an age-discrimination case, where the remarks were not directed toward the plaintiffs).

factfinder to infer that Winton Hills had some hostility toward Boyd after she filed her own claim.

### 2. Evaluations

Another of Boyd's claims involves the performance evaluations that she received before and after she filed her claim. In the four evaluations that Boyd received before she filed her claim, she received "Outstanding" for most categories that were evaluated. Only a few categories fell below the "Outstanding" ranking. For instance, a 1994 evaluation indicated "Needs Improvement" for the category of "Attendance," and under "Dependability," Boyd was only ranked as "Satisfactory." After Boyd filed her claim, however, she received no rankings of "Outstanding." Rather, all her categories were ranked as "Satisfactory" or lower. "Attendance" was ranked as "Inadequate," and "Dependability" fell under "Needs Improvement." (The evaluation completed after Boyd filed her claim was signed in March 1996. It was in a slightly different form than Boyd's previous evaluations. Instead of using the term "Outstanding," for instance, the evaluation said "Excellent." Instead of saying "Needs Improvement," it said "Marginal." We note that, in the record that we have before us, the March 1996 evaluation and an evaluation from 1995 were never properly authenticated. But, because three of the earlier evaluations were properly authenticated and because Winton Hills never objected to the evaluations that were not properly authenticated, we assume that the trial court, in its discretion, considered them.[10])

Winton Hills claims that the March 1996 evaluation simply reflected problems that Boyd was having at work before she filed her workers' compensation claim, such as with attendance and dependability. But a jury could find it suspect that, before she filed her claim, she was ranked primarily as "Outstanding," but that, after she filed her claim, her rankings in all categories dropped to "Satisfactory" or lower. This drop in evaluations—in combination with the fact that Boyd testified that, after she filed her claim, Crenshaw treated her differently and no longer would talk to her regarding questions about the medical-records department—supports another inference that Winton Hills was hostile toward Boyd after she filed her claim. Although this inference alone might not be enough to establish a prima facie case of retaliation, we hold that a prima facie case is created when it is combined with Crenshaw's comment discussed above and with

---

**10.** See *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 89, 590 N.E.2d 411, 415 ("The proper procedure for the introduction of evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate the material by reference into a properly framed affidavit. If there is no objection, then the court in its discretion may consider the material." [Citations omitted.]).

the fact that the alleged hostility came so shortly after Boyd filed her claim in April 1995.[11]

## B.   Winton Hills's Reason for Discharge

██   To counter Boyd's prima facie case of retaliation, Winton Hills argues that it was experiencing financial problems before Boyd's termination and that the elimination of Boyd's position was merely the result of business judgment it exercised in attempting to save money.   Winton Hills points out that its finance director, Ruth Engels, determined that the center was in financial distress because it was "piling up a lot of bills that [it] had no money to pay."   Engels, who determined that Winton Hills did not expect "to be getting any big money in," concluded that Winton Hills needed to cut expenses and that prompt action was necessary.   According to Winton Hills, the staff was restructured in an effort to save money: two full-time positions, including Boyd's, were eliminated, certain full-time positions were changed to part-time positions, and certain vacant positions were eliminated.   Winton Hills explains that Boyd's position was eliminated because, among other things, she was paid substantially higher compensation than the other employees in the department.   Also, Winton Hills determined that medical records did not need its own supervisor; instead, the clinic manager at the center could supervise it.

We conclude that Winton Hills has offered a legitimate, nonretaliatory reason for Boyd's discharge.   According to Winton Hills, employees besides Boyd—employees who had not filed workers' compensation claims—were also negatively affected by the company's restructuring.

## C.   Pretext

██   In response to Winton Hills's arguments, Boyd asserts that the financial problems were only a pretext to conceal Winton Hills's true retaliatory motives. Boyd argues that Winton Hills greatly overstated its problems.   She points out that Engels admitted at her deposition that cash for health centers fluctuates greatly from year to year depending on when government grants are due.   Boyd also explains that Engels conceded that, when she determined that there was a financial problem, the financial statements for Winton Hills were completed only

---

11.   See *Turton v. York Internatl.* (July 29, 1998), Lorain App. No. 97CA006790, unreported, 1998 WL 470060 (basing reversal of summary judgment on poor evaluations received after the filing of a workers' compensation claim); *Johnson v. RAWAC Plating Co.* (1988), 48 Ohio App.3d 171, 172, 549 N.E.2d 192, 193 (basing reversal of summary judgment on plaintiff's affidavit that his company's attitude toward him had changed for the worse after his industrial injury); *Hill v. Christ Hosp.* (1998), 131 Ohio App.3d 660, 723 N.E.2d 581 (Hildebrandt, J., dissenting) (suggesting that plaintiff's termination six months after her lawsuit was filed raised an inference of retaliation in a wrongful-discharge case).

through January 1996. In addition, Boyd points out that, shortly after she was terminated, Crenshaw was given a raise. (Winton Hills counters that this raise was only given because Crenshaw had not been given one in two years, her contract was up for renewal, and her salary was the lowest for all community centers in Winton Hills's network.) Finally, Boyd argues that she held the only full-time position that was eliminated during the restructuring. She agrees that two full-time employees were initially terminated: a medical assistant and herself. But she claims that the medical assistant was later replaced.

With the evidence viewed in the light most favorable to Boyd, we conclude that she has sufficiently rebutted Winton Hills's nonretaliatory justification for her termination. According to Winton Hills, the determination that there was a financial crisis was based on Engels's determination that Winton Hills was "piling up a lot of bills that [it] had no money to pay." But, because Winton Hills only had financial statements through January 1996 when it decided to restructure, and cash for health-care centers fluctuates greatly from year to year, Boyd has cast doubt on the legitimacy of Winton Hills's determination that there was a crisis. A factfinder might conclude that the incomplete financial data was offered as a pretext. Although courts will not generally second-guess business judgments by employers in making personnel decisions,[12] the fact that Crenshaw was given a raise shortly after Boyd was terminated,[13] as well as the fact that Boyd may have had the only full-time position to be eliminated, may be viewed by a factfinder as casting doubt on the legitimacy of the restructuring.

Therefore, we hold that genuine issues of material fact exist regarding Boyd's claim under R.C. 4123.90. Boyd's second assignment is sustained.

### IV    *Chapman* Claim

In Boyd's third assignment, she asserts that the trial court erred in granting summary judgment on her public-policy claim. After Boyd filed her workers' compensation claim and began to suspect that Winton Hills was retaliating against her, she contacted two attorneys. In September 1995, one attorney wrote Winton Hills a letter that put it on notice that it might be violating R.C. 4123.90. In April 1996, the other attorney wrote a letter to Winton Hills expressing concern about Boyd's March 1996 performance evaluation. Boyd alleges that her termination was related to the involvement of the attorneys.

---

12. See *Brock v. Gen. Elec. Co.* (1988), 125 Ohio App.3d 403, 708 N.E.2d 777.

13. See *McMahon v. Libbey–Owens–Ford Co.* (C.A.6, 1989), 870 F.2d 1073, 1077 (suggesting that raises given to employees may establish that financial problems were a pretext).

To establish a public-policy claim, she relies on this court's decision in *Chapman v. Adia Servs., Inc.*[14] In that case, we held that Ohio's public policy prohibits an employee from being fired solely for consulting an attorney.[15] Under *Chapman,* the employee must establish a nexus between the consultation and the termination. Here, Boyd relies on the same arguments used to support her claim under R.C. 4123.90. She raises no additional facts to establish a connection between her contact with the attorneys and her termination. Although the arguments raised are sufficient to defeat summary judgment on the claim under R.C. 4123.90, we hold that these arguments are not sufficient to defeat summary judgment on the *Chapman* claim. Our holding regarding R.C. 4123.90 is based in large part on Crenshaw's comment that she wanted Williams "out of here" after he filed his workers' compensation claim. Without the testimony regarding that comment, we would have affirmed summary judgment on the claim under R.C. 4123.90. Because Crenshaw's comment referred to workers' compensation, but had nothing to do with contact with attorneys, we do not believe that it is relevant to a *Chapman* claim. Since Boyd's remaining arguments regarding her *Chapman* claim do not create a genuine issue of fact, we overrule her third assignment.

## V   Amended Complaint

Finally, in Boyd's first assignment, she asserts that the trial court erred when it denied her motion to amend her complaint to add a new common-law wrongful-discharge cause of action based on Winton Hills's alleged violation of R.C. 4123.90. When Boyd originally filed this lawsuit, Ohio case law held that R.C. 4123.90 provided the exclusive remedy in workers' compensation retaliation cases and that a common-law cause of action based on the public policy underlying the statute did not exist.[16] After the lawsuit was filed, the Ohio Supreme Court decided *Kulch v. Structural Fibers, Inc.*[17] That case held that an at-will employee who is discharged in violation of Ohio's whistleblower statute may maintain a common-law cause of action against his or her employer for termination in violation of public policy.[18] Boyd argues that, after *Kulch,* employees now also have causes of action for termination in violation of public policy based

---

**14.** (1997), 116 Ohio App.3d 534, 688 N.E.2d 604.

**15.** *Id.* at 537, 688 N.E.2d at 606.

**16.** See, *e.g., Hyatt v. Neaton Auto Prods. Mfg., Inc.* (1995), 103 Ohio App.3d 591, 593–594, 660 N.E.2d 529, 531; *Moore v. Animal Fair Pet Ctr., Inc.* (1995), 81 Ohio Misc.2d 46, 49, 674 N.E.2d 1269, 1272.

**17.** (1997), 78 Ohio St.3d 134, 677 N.E.2d 308.

**18.** *Id.,* paragraph three of the syllabus.

on employers' violations of R.C. 4123.90. She claims that the trial court abused its discretion by not allowing her to amend her complaint to add a new cause of action.

Under Civ.R. 15(A), if a party seeks to amend his or her complaint after the time period set forth in that rule, leave of court or written consent of the adverse party is required. Leave of court "shall be freely given when justice so requires."[19] It is an abuse of discretion "for a court to deny a motion, timely filed, seeking leave to file an amended complaint, where it is possible that [the] plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed."[20] Here, the court denied Boyd's motion to amend her complaint because it "fail[ed] to state an actionable claim." Because we agree with Boyd that *Kulch* provides the basis for an actionable claim, we hold that the trial court abused its discretion.

In *Kulch*, a plurality opinion, an employee filed suit against his employer, a manufacturer of tanks used in well-water systems.[21] The employee claimed that the employer had retaliated against him for filing a report of alleged health violations with the Occupational Safety and Health Administration (OSHA).[22] He filed a statutory whistleblower claim against his employer and a common-law wrongful-discharge claim based on the employer's alleged violation of the whistleblower statute.[23] The issue was whether the statutory claim preempted the common-law claim. The plurality concluded that the whistleblower statute, as well as a related federal statute, was a clear source of public policy that prevented employers from retaliating against employees for filing OSHA complaints.[24] Based on the language of the whistleblower statute and an examination of the legislative intent behind that statute, the plurality stated that the remedies of that statute were not intended to be exclusive.[25] It explained that the whistleblower statute's remedies—which did not include certain compensatory damages or punitive damages—were not adequate to fully compensate an ag-

---

**19.** Civ.R. 15(A).

**20.** *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113, paragraph six of the syllabus.

**21.** 78 Ohio St.3d at 135, 677 N.E.2d at 310.

**22.** *Id.*

**23.** *Id.* at 136, 677 N.E.2d at 311.

**24.** *Id.* at 151–153, 677 N.E.2d at 321–323.

**25.** *Id.* at 158–161, 677 N.E.2d at 326–328.

grieved employee.[26]   Because the statutory remedies were not intended to be exclusive, the plurality held that the employee could file the common-law claim.[27]

We believe that *Kulch*'s rationale is broad enough to encompass workers' compensation retaliation claims.   Just as there is a clear public policy against retaliation for filing whistleblower claims, there is also a clear public policy against retaliation for filing workers' compensation claims.[28]   As in *Kulch*, where the plurality concluded that the legislature did not intend remedies under the whistleblower statute to be exclusive, we conclude that a plaintiff in a workers' compensation retaliation case is entitled to more relief than that provided under R.C. 4123.90.   R.C. 4123.90's relief in termination cases is limited to reinstatement with back pay and attorney fees, but there is no evidence that the legislature intended relief under R.C. 4123.90 to be exclusive.[29]   Considering that R.C. 4123.90 should be liberally construed in favor of employees,[30] we hold that the trial court should have permitted Boyd to amend her complaint to add a common-law wrongful-discharge claim.

We note that we are not the first court to hold that *Kulch* has expanded the law.   In *Livingston v. Hillside Rehab. Hosp.*,[31] for instance, an employee brought an age-discrimination claim under Ohio's age-discrimination statute, as well as a common-law wrongful-discharge claim based on the employer's alleged violation of that statute. . Unlike the whistleblower statute in *Kulch*, which had limited remedies, the statute in *Livingston* provided the same remedies as the common-law claim.[32]   The only difference was that the statute did not provide for a jury trial.[33]   But, despite the fact that the employee's common-law claim would not provide any additional remedies, the Ohio Supreme Court, "on the authority of [*Kulch* ]," held that the employee could bring the common-law claim.[34]

---

26.   *Id.* at 157, 677 N.E.2d at 325.

27.   *Id.* at 162, 677 N.E.2d at 329.

28.   See *Hill, supra* (Hildebrandt, J., dissenting).

29.   See *Balyint v. Arkansas Best Freight Sys., Inc.* (1985), 18 Ohio St.3d 126, 130, 18 OBR 188, 191–192, 480 N.E.2d 417, 421 ("[b]y its terms, R.C. 4123.90 does not make the remedy provided therein an exclusive one").

30.   R.C. 4123.95.

31.   (1997), 79 Ohio St.3d 249, 680 N.E.2d 1220.

32.   See *id.* at 250, 680 N.E.2d at 1221 (Cook, J., dissenting).

33.   See *id.*   (Cook, J., dissenting).

34.   See *id.* at 249, 680 N.E.2d 1220.

One commentator, who suggests that employees can now pursue common-law claims for violations of R.C. 4123.90, has explained the significance of *Kulch* and *Livingston:*

"By expanding the public policy exception to include violations of public policy expressed in statutes that provide their own remedies, *Kulch* has provided wrongfully discharged employees access to a greater range of remedies. * * * *Livingston* explicitly follows *Kulch,* and further expands the public policy exception. * * * [Ohio's age discrimination statute] provides for the same range of remedies as an action for wrongful discharge. The only difference is that there is no entitlement to a jury trial under [the statute]. So it is not just a question of access to a broader remedy that appears to be at issue, but rather the opportunity to choose the best avenue to obtain such a remedy." (Citations omitted.)[35]

█ Here, a common-law wrongful-discharge claim would allow Boyd to pursue remedies that are not included under R.C. 4123.90, such as punitive damages. Also, a common-law claim would give Boyd the right to a jury trial, which R.C. 4123.90 does not.[36] Considering the reasoning of *Kulch* and the liberal interpretation given to *Kulch* in *Livingston,* we conclude that Ohio law allows common-law wrongful-discharge claims for violations of R.C. 4123.90. Boyd's first assignment is sustained.

Therefore, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings in accordance with law.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HILDEBRANDT, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

---

**35.** Rosenthal, Kulch v. Structural Fibers, Inc.: Clarifying the Public Policy Exception (1997), 45 Cleve.St.L.Rev. 681, 697.

**36.** See *Gallaher v. Western Southern Life Ins. Co.* (Dec. 10, 1986), Hamilton App. No. C–860062, unreported, 1986 WL 14063 ("[w]e hold that the remedies envisioned by R.C. 4123.90 are essentially equitable in nature, generally reinstatement, and therefore no right to a jury exists under the statute").