OPINION
{¶ 1} Plaintiff-appellant Mark Marino appeals from the May 20, 2005, Judgment Entry of the Stark County Court of Common Pleas granting summary judgment in favor of defendant-appellee Advantage Management Group, Inc. Appellant assigns a single error:
 {¶ 2} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS THAT HE WAS TERMINATED IN RETALIATION FOR FILING A WORKERS' COMPENSATION CLAIM."
 {¶ 3} Appellee Advantage Management Group, Inc. delivers petroleum products, including fuel and asphalt. Appellee hired appellant in the spring of 2003 as a tanker truck driver. On July 23, 2003, appellant sustained an injury to his right eye when, during an inspection of his truck, a bungee cord snapped and hit him in the eye.
 {¶ 4} On July 23, 2003, appellant filed a claim with the Bureau of Workers' Compensation. There was no dispute appellant had been injured in connection with his employment. Appellee, which is self-insured, recognized appellant's claim and did not contest appellant's right to participate in the workers' compensation system. Appellant's claim was allowed for "acute iridocyclitis nos right, conjunctivitis nec right, superficial injury right cornea, contusion orbital tissue right and glaucoma with ocular trauma right."
 {¶ 5} Because of the loss of vision in his right eye, appellant was unable to continue his employment as a truck driver. After being off of work for two months due to his injury, appellant was given light duty work in appellee's office. While working light duty, appellant sometimes assisted the fuel dispatchers. Appellant testified dispatching was not an easy job since "[t]here's all kinds of things that come up . . .," but that he liked "gas [fuel] dispatch a lot" and felt that he was "very knowledgeable" about it.
 {¶ 6} On January 15, 2004, when a vacancy opened up in fuel dispatch, appellee reassigned appellant to a position as a fuel dispatcher at a salary of $30,000.00 a year, which was more than he made as a truck driver. Appellee's "Personnel Change Notice" dated January 15, 2004, stated appellant "has been training in dispatch office and had made adequate progress and can perform duties as dispatcher."
 {¶ 7} At some point appellant hired new counsel, who filed a motion with the Bureau of Workers' Compensation on April 23, 2004, seeking additional benefits for appellant's loss of vision. Even though appellee's doctor agreed appellant had suffered a total loss of vision in his right eye, appellee contested appellant's claim. Subsequently, on August 18, 2004, the Industrial Commission of Ohio recognized appellant's claim for loss of vision and appellee, as a result, was required to pay appellant approximately $89,000.00.
 {¶ 8} Appellee's business involves both fuel dispatching and asphalt dispatching, which are handled separately. For the first four months of his employment as a dispatcher, appellant worked as a fuel dispatcher. Appellee maintains appellant had problems performing the job of a fuel dispatcher, including failing to relay relevant information, and also made errors in dispatching loads. During his deposition, Larry Noble, appellant's supervisor, testified nearly every Friday when appellant was working dispatch, there were problems because appellant took on too much work. This caused late deliveries and even customers running out of gas. If a day dispatcher such as appellant took on too much work it would create problems for the night dispatcher, and even carry over into the next day. Noble testified appellant was expected to know what the capacity was and how much work to take. Noble deposed he had numerous discussions with appellant about the problem. Noble also testified "[t]here were a few other occasions of giving out the wrong loading number to the driver which caused a cargo claim", causing deliveries to be billed to the wrong account. Noble testified one of the incidents resulted in a $700.00 claim from a customer. Appellant himself admitted during his deposition that he dispatched a truck driver to the wrong gas station location.
 {¶ 9} Appellant also had difficulties ensuring there were sufficient drivers to make the deliveries. According to Noble, this happened twice and he talked to appellant about it both times. Noble testified on one occasion, a truck driver called off and appellant failed to have another driver fill in, causing appellee to miss a promised delivery to BP, which had stations run out of gas. BP complained about the missed delivery.
 {¶ 10} Because of the problems appellant had performing in the fuel dispatch area, appellant was transferred to the asphalt dispatch side of appellee's business. While appellant had heard asphalt dispatching was easier, he was unfamiliar with asphalt dispatching whereas he was familiar with fuel dispatching. Appellant admitted he had problems with asphalt dispatching and testified:
 {¶ 11} "A. I can't — I don't remember, I just — I know that, you know, being trained in this job, I wasn't trained in that job. I wasn't trained to deliver asphalt or dispatch asphalt, no. I was not trained to do that.
 {¶ 12} "Q. How long did you dispatch asphalt before you were let go?
 {¶ 13} "A. I would have to — I don't know how long I was doing asphalt. A couple weeks, maybe.
 {¶ 14} "Q. About five weeks?
 {¶ 15} "A. Probably — probably yeah, close to a month, yeah.
 {¶ 16} "Q. Did you indicate to anybody that you didn't like dispatching asphalt?
 {¶ 17} "A. I indicated to Larry Northup and Roy [Underwood] that I didn't know what all these products were. I didn't understand — I didn't have a grip on why I couldn't load these products on top of each other. I knew that if I screwed those up loading them on top of each other — the drivers knew better. They were smart enough to know that if this guy tells me this, I'm going to question him and they did."
 {¶ 18} Northrup is a dispatch supervisor and the person who trained appellant. Underwood was Northrup's backup.
 {¶ 19} Northrup testified appellant did not have the ability to do the job. In his deposition Northrup testified: "I mean, you could try to teach him something and he just did not grasp it. No matter what you did or how many times you did it, he just didn't seem to get the concept of what we were doing."
 {¶ 20} During his deposition, appellant testified his supervisors told him he was doing a good job. When asked about specific persons, appellant conceded:
 {¶ 21} "He [Larry Noble] would tell me to watch this or watch that regarding giving — getting too many loads, or if a driver loaded ethanol and the station didn't take ethanol, Larry would tell me, `You got to be more specific with that.' * * *
 {¶ 22} "Roy [Underwood] would tell me that you need to get a grasp on this, and that was in the asphalt.
 {¶ 23} "Q. What about fuel, though?
 {¶ 24} "A. No." * * *
 {¶ 25} "Ryan [Molder] would tell me about accepting too many loads. Jerry Conley would tell me about accepting too many loads. Jerry Conley also told me to get a better grip on the area map".
 {¶ 26} Ryan Molder is identified in the record as working with appellant in dispatch. Jerry Conley is the lead dispatcher.
 {¶ 27} In May of 2004, appellant failed to give a truck driver the right code for a delivery. The customer got the wrong materials and was forced to shut down its project until the right materials arrived. On June 3, 2004, after appellant failed to give a load to a driver, Owens-Corning, one of appellee's largest customers, ran low. Four days later, on June 7, 2004, appellee terminated appellant's employment.
 {¶ 28} On December 3, 2004, appellant filed a complaint against appellee in the Stark County Court of Common Pleas, alleging he had been unlawfully terminated in retaliation for filing a workers' compensation claim. Appellant set forth both a statutory claim under R.C. 4123.90 and a common law claim for wrongful discharge in violation of public policy. Subsequently, appellee filed a motion for summary judgment. On May 20, 2005, the trial court granted appellee's motion, finding appellant was discharged because he could not satisfactorily perform the duties of a dispatcher. The court noted Ohio Courts have repeatedly recognized that R.C. Section 4123.90 does not prohibit a discharge for just and legitimate reasons.
 {¶ 29} The court correctly found once the employer sets forth a legitimate non-retaliatory reason for the employee's discharge, the burden shifts to the employee to establish that the reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act. The court found appellant had not met this burden. The court also sustained appellee's motion for summary judgment on appellant's second claim, that appellee's conduct in terminating him violated public policy. The court found this claim is a derivative cause of action which is dependent upon the first cause of action for violation of R.C.4123.90.
 {¶ 30} Civ.R. 56(C) states in pertinent part:
 {¶ 31} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 32} Pursuant to the rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed, nor if reasonable minds could draw differing conclusions from the undisputed facts. Trial courts should award summary judgment with caution. "Doubts must be resolved in favor of the non-moving party." Murphy v. Reynoldsburg,65 Ohio St. 3d 356, 359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 33} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212.
 {¶ 34} Appellant argues the trial court erred in granting appellee's motion for summary judgment with respect to appellant's claims he was terminated in retaliation for filing a workers' compensation claim.
 {¶ 35} R.C. 4123.90 states in pertinent part:
 {¶ 36} "* * * No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. * * *."
 {¶ 37} This statute "embodies a clear public policy that employers not retaliate against employees who exercise their statutory right to file a workers' compensation claim or pursue workers' compensation benefits." White v. Mt. Carmel Med. Ctr.,150 Ohio App.3d 316, 327, 780 N.E.2d 1054, 2002-Ohio-6446
(citations omitted). Nonetheless, "[e]mployees who have filed for workers' compensation benefits may be discharged for just and lawful reasons. The statute protects only against termination in direct response to the filing or pursuit of a workers' compensation claim." Id. at 328, citing Markham v. Earle M.Jorgensen Co. (2000), 138 Ohio App.3d 484, 493, 741 N.E.2d 618;Russell v. Franklin Cty. Auditor (Sept. 28, 1999), Franklin App. No. 98AP1-502.
 {¶ 38} An employee establishes a prima facie case for retaliatory discharge when the employee proves he or she (1) was injured on the job, (2) filed a workers' compensation claim, and (3) was discharged in contravention of R.C. 4123.90. Kilbargerv. Anchor Hocking Glass Co. (1997), 120 Ohio App.3d 332,337-338, 697 N.E.2d 1080; Wilson v. Riverside Hosp. (1985),18 Ohio St.3d 8, 479 N.E.2d 275, at syllabus. If an employee creates a prima facie case, the burden shifts to the employer to provide a legitimate nonretaliatory explanation for the discharge.Kilbarger at 338. "[I]f the employer sets forth a legitimate, nonretaliatory reason, the burden once again shifts to the employee. The employee must then establish that the reason articulated by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act." Id.
 {¶ 39} Appellant met his initial burden and established a prima facie case for retaliatory discharge. Appellee responded with evidence of a legitimate non-retaliatory reason for terminating his employment. The burden then shifted to appellant to produce evidence the non-retaliatory reason is pretexual. Thus, the critical issue becomes whether, construing the evidence in appellant's favor, appellant provided the trial court with evidence he was discharged in contravention of R.C. 4123.90 for filing a workers' compensation claim. A plaintiff may show he or she was discharged in contravention of R.C. 4123.90 by direct and/or circumstantial evidence. Kent v. Chester Lab, Inc.
(2001), 144 Ohio App.3d 587, 592, 761 N.E.2d 60.
 {¶ 40} We find appellant did not provide evidence to rebut appellee's evidence tending to show it had a non-retaliatory reason to terminate him, namely, that he was unable to perform the job satisfactorily.
 {¶ 41} Appellant does not deny the numerous problems arose out of the way he performed his dispatch duties. Instead, he concedes all the incidents occurred, and his supervisors spoke to him about them. In spite of the above, appellant testified his supervisors only told him he was doing a good job, and appellant believed he was doing a good job.
 {¶ 42} Appellant's supervisors may well have told him he was doing a good job on the occasions he was doing so. This does not mean reasonable minds could find appellant was doing a good job overall or was capable of performing the dispatch job. Appellant's testimony does not contradict or rebut appellee's evidence. We find appellant has not refuted appellee's stated non-retaliatory reason for terminating his employment, and summary judgment was appropriate.
 {¶ 43} The trial court also granted summary judgment on appellant's claim appellee violated Ohio public policy by firing appellant for filing a workers' compensation claim. In Boyd v.Winton Hills Medical Health Center, Inc. (1999),133 Ohio App.3d 150, 727 N.E.2d 137, the court, relying on Kulch v.Cultural Fibers, Inc. (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, held that "Ohio law allows common-law wrongful-discharge claims for violations of R.C. 4123.90." Boyd, supra, at 161. Such common-law causes of action include a cause of action for termination in violation of public policy. Id. at 1591-61. A common-law wrongful-discharge claim allows remedies which are not included under R.C. 4123.90, such as punitive damages, and also confers upon the plaintiff a right to a jury trial. Id. at 161.
 {¶ 44} Because we find appellant has not established he was fired for filing his workers' compensation claim, he cannot sustain his public policy action which is, as the trial court found, a derivative claim.
 {¶ 45} The assignment of error is overruled.
 {¶ 46} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
Gwin, P.J. Farmer, J. concur Edwards, J. dissents