KAREN NELSON MOORE,
Circuit Judge, dissenting.
Because there are genuine disputes of material fact relevant to each of Sharp’s claims, the district court erred by granting defendants’ motion for summary judgment. Affirming the district court, the majority makes a crucial factual mistake in its opening sentence, which leads to several incorrect conclusions. The majority begins by stating that Waste Management imposes “a simple policy: if there is an incident on the job, report it immediately by obtaining and completing a single-page form describing the details.” Maj. Op. at 441. Contrary to this assertion, it is not an undisputed fact that Waste Management requires employees to report injuries by completing *452 incident reports. The record certainly makes clear that Waste Management requires employees to report injuries to their supervisors, but the record also indicates that verbal reports—not written incident reports—constitute reports. Because Sharp testified that he verbally reported his injury to his supervisor, the district court and the majority err by concluding that Waste Management had a legitimate reason to fire Sharp. I would reverse the district court.
I. BACKGROUND
Plaintiff-Appellant William Sharp alleged that Defendants-Appellees James Profitt, Barry Saunders, and Waste Management of Ohio engaged in workers’ compensation retaliation, Family Medical Leave Act (FMLA) retaliation, Americans with Disabilities Act (ADA) retaliation, and a violation of the Ohio public policy forbidding termination of an employee for consulting a lawyer. Defendants sought summary judgment on all claims. R. 41 (Def.’s Mot. for Summ. J. at 1). Sharp filed a response arguing that there were genuine disputes of material fact and that the case should proceed to trial. R. 49 (Opp. to Def.’s Mot. for Summ. J. at 59-60) (Page ID #1805-06). Sharp also filed a motion for partial summary judgment on the public-policy claim. R. 43 (Pl.’s Mot. for Partial Summ. J. at 34) (Page ID #1457).
The district court’s order and the majority opinion incorrectly apply the summary-judgment standard. Summary judgment is proper “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). “[0]n summary judgment the inferences to be drawn from the underlying facts .., must be viewed in the light most favorable to the party opposing the motion.” Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (second alteration in original). “[A]t the summary judgment stage the judge’s function is not himself to weigh the evidence and determine the.truth of the matter but to determine whether there is a genuine issue for trial.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That is, “[wjeighing of the evidence or making credibility determinations are prohibited at summary judgment—rather, all facts must be viewed in the light most favorable to the non-moving party.” Keweenaw Bay Indian Cmty. v. Rising, 477 F.3d 881, 886 (6th Cir. 2007).
Contrary to these well-established rules, the majority construes the facts in favor of the defendants and against Sharp. Correct application of these rules leads to the conclusion that there are genuine disputes of material fact that a jury should resolve.
II. WORKERS’ COMPENSATION RETALIATION
Sharp alleges that Waste Management fired him in retaliation for filing a workers’ compensation claim, in violation of Ohio Rev. Code § 4123.90. The majority correctly explains that workers’ compensation retaliation claims are governed by the McDonnell-Douglas burden-shifting framework. Glenn v. Hose Master, L.L.C., 61 N.E.3d 609, 611-12 (Ohio Ct. App. 2016). Under this framework, the employee must state a prima facie case; if the employee states a prima facie case, the burden shifts to the employer to state a legitimate, nonretaliatory reason for the discharge; if the employer states a legitimate reason for the discharge, the burden shifts back to the employee to establish that the employer’s stated reason is pretext for retaliation. Id. at 612; see also Onderko v. Sierra Lobo, Inc., Nos. 2014-1881, 2014-1962, 148 Ohio St.3d 156, 161, *453 165, 69 N.E.3d 679, 2016 WL 3922905, at *5, 8 (Ohio July 21, 2016) (holding that to state a prima facie case of retaliatory discharge, an employee must show that the employer took adverse employment action because the employee filed a workers’ compensation claim, not that the employee suffered a workplace injury).
The majority determines that defendants are entitled to summary judgment because Sharp cannot show that there is a genuine dispute over pretext. According to the majority, Waste Management had two legitimate reasons for firing Sharp—his “fail[ure] to report an alleged injury for over six months” and his “refus[al] to complete an incident report when asked twice by his managers”—and Sharp cannot show that these reasons are pretextual. Maj. Op. at 446. Yet Sharp contests both that he failed to report an injury and that he refused to complete an incident report. In determining that Sharp’s testimony does not create a genuine dispute of material fact, the majority at best draws inferences against Sharp and at worst mischaracter-izes his statements.
First, Sharp says that he did report the alleged injury. Sharp attests that he “told Saunders that [he] had injured [his] back lifting tree stumps on [his] route,” but that Saunders responded that Sharp’s injury was out of his hands. Sharp Aff. at ¶ 12. Sharp also attests that, “in addition” to speaking directly with Saunders, Sharp and his wife “made numerous attempts to inform Defendants by telephone” of the injury. Sharp Aff. at ¶¶ 13-14,18.
Discussing Sharp’s testimony, the majority states, “Sharp says that because he attempted to report the incident for three months, Waste Management’s contention that he never reported the incident is simply untrue.” Maj. Op. at 446. This statement does not accurately reflect Sharp’s testimony. It seems to ignore altogether Sharp’s statement that he told Saunders about the injury. Otherwise, it incorrectly characterizes Sharp’s statement that he told Saunders about the injury but Saunders did not want to hear about it as an attempt to report the injury, rather than an actual report that Saunders disregarded.
The majority defends its conclusion that Sharp never reported the incident, despite telling Saunders about it, by arguing that Sharp was required to report the injury in a specific way—namely, by filling out a written incident report. Maj. Op. at 446 n.4. This argument fails because the record does not indicate that only written incident reports satisfy the reporting requirement. Instead, the record suggests that verbal reports satisfy the reporting requirement.
The Waste Management Employee Handbook addresses safety in two different sections. In the “General Work Rules” section, the handbook says, “Failing to immediately report to the Company any accident involving property damage or injuiy of any kind whether or not the employee is at fault” could result in corrective action, including termination. R. 43-17 (Employee Handbook at 37, 39) (Page ID #1514, 1516). In the “Safety Policy” section, the handbook says, ‘You are instructed to report all work-related injuries, accidents, near misses, and any health or safety hazards, including violations of safety procedures, immediately to your supervisor. Failure to do so will result in corrective action up to and including termination.” Id. at 35 (Page ID #1512). The only specific guidance the .handbook gives employees about how to report injuries is specifying that they must report injuries “to [their] supervisor.” Id. The handbook does not specify any particular method for reporting injuries to supervisors—in particular, it makes no mention of incident reports.
*454 Portions of the record indicate that Waste Management expected employees to fill out incident reports for on-the-job injuries. For example, in a write-up about the incident, Saunders said that, “a driver statement ... is a requirement for all incidents and injuries.” R. 41 (Def.’s Mot. for Summ. J., Ex. N, 10/26/2012 Letter from Saunders at 1). Sharp himself believed that company policy required incident reports for workplace injuries. R. 42 (Sharp Dep. at 79).
On the other hand, nothing in the record suggests that an employee fails to report an injury unless he submits an incident report. Based on the record before us, one reasonable inference is that submitting an incident report is an additional requirement that employees must complete after reporting injuries. And while the handbook is' explicit that an employee can be terminated for failing to report an injury to a supervisor, it does not even suggest that an employee can be terminated for failing to fill out paperwork about an injury after reporting it.
The testimony of another Waste Management Employee supports this inference. Anthony Bohman discussed an occasion where he hurt his shoulder on the job. He explained that he “talked to James Profitt when we got back to the shop. I told him what happened and I told about my injury.” R. 39 (Bohman Dep. at 25) (Page ID #755). When asked, “Did you ask him for an incident report form?” Boh-man responded, “I was reporting an incident. That’s what would trigger for him to hand out the incident report form.” Id. (emphasis added). This testimony suggests that Waste Management employees understood company policy to define “reporting” an injury to mean verbally informing a supervisor of the injury, and regarded filling. out an incident report as a step that occurred after reporting the injury. This understanding makes sense in light of the Employee Handbook’s emphasis on reporting injuries, on the one hand, and the Handbook’s failure to even mention written incident reports, on the other.
Because at this stage we must credit Sharp’s testimony and draw reasonable inferences in his favor, because one reasonable inference (and, frankly, the most reasonable inference) is that verbally reporting an injury to a supervisor constitutes reporting the injury, and because Sharp testified that he verbally reported his injury to his supervisor, the majority errs by determining that Sharp did not report his injury.
The majority’s argument that “Sharp’s testimony, even if credited as ‘reporting’ the incident, still shows no dispute as to whether Waste Management honestly believed that he failed to report his incident,” also fails. Maj. Op. at 446 n.4. It is reasonable to infer that Waste Management managers knew that their policy defined reporting as verbal reporting. It is also reasonable to infer that Saunders knew that Sharp had verbally reported the incident to Saunders. At the summary-judgment stage, we must draw these inferences in favor of Sharp rather than rushing to apply the honest-belief rule.
Second, Sharp says that he did not refuse to complete an incident report. Sharp attests that when Saunders asked him to fill out a document, which he “concluded ... was related to workers comp.,” he “told Saunders that [he] would be glad to fill it out if [he] could take it home and consult with [his] attorney.” Sharp Aff. at ¶¶ 36-37. He attests that after Saunders admonished him for consulting an attorney about workers’ compensation, Saunders told Sharp to leave and not come back to work. Id. at ¶¶ 38-41.
The majority characterizes this exchange as Sharp’s refusal to fill out the *455 incident report, adding that it “may be a conditional refusal, but it is still a refusal.” Maj. Op. at 445 n.3. Even the majority’s characterizing this exchange as a conditional refusal draws improper inferences in favor of the moving party. It would perhaps be possible to infer that Sharp was refusing to fill out the paperwork, but it is also possible to infer that Sharp was confused about the paperwork, wanted to talk with an advisor, and would submit the completed paperwork promptly after consulting an attorney. Characterizing this potentially ambiguous exchange as a refusal to fill out the incident report draws inferences in favor of defendants, i.e., the moving party.
When not mischaracterized or impermis-sibly construed in defendants’ favor, Sharp’s testimony that he told Saunders about his injury and said he would fill out the paperwork after talking with an attorney creates a genuine issue of material fact as to whether defendants had a legitimate reason to fire Sharp. This factual dispute makes summary judgment inappropriate.
There are additional disputes of material fact as to pretext, which also make summary judgment inappropriate. As evidence of pretext, Sharp points to examples of other employees who failed to report incidents and were not fired. He says these examples provide evidence that Waste Management did not uniformly apply its policy and that his conduct did not warrant termination. The majority correctly acknowledges that the Sixth Circuit has found the non-uniform application of a disciplinary policy to be evidence of pretext. Maj. Op. at 446 (citing Lamer v. Metaldyne Co. LLC, 240 Fed.Appx. 22, 33 (6th Cir. 2007)). Then the majority asserts that Sharp ignores key differences between his situation and the examples. It declares that “[t]o infer pretext from these four incidents is not reasonable, and they create no genuine dispute as to whether Waste Management applied its policy to Sharp in a way that shows pretext.” Maj. Op. at 447. Of course, the four examples Sharp cites are not identical to his own situation. These examples do involve employees failing to report incidents that Waste Management’s policies require them to report. See R. 49 (Opp. to Def.’s Mot. for Summ. J. at 58) (Page ID #1804). These examples are similar enough to Sharp’s situation to permit an inference of pretext. A jury, not this court, should ultimately determine whether to infer pretext.
Similarly, the majority incorrectly concludes that Waste Management’s possible incentive for supervisors to underreport injuries does not create a factual dispute as to pretext. There is no dispute that Waste Management disciplines supervisors when their crews have too many accidents and gives supervisors bonuses when their crews have few accidents. The majority, with no evidentiary support, asserts that this system “creates no inference that managers actually shirk their reporting duties or that it would be tolerated.” Maj. Op. at 447. Whether supervisors underre-port injuries is another question that a jury, not this court, should answer.
Because there are numerous disputes of fact that a jury should resolve, the district court’s grant of summary judgment on the workers’ compensation retaliation claim should be reversed.
III. ADA DISCRIMINATION AND RETALIATION AND FMLA RETALIATION
The majority also asserts that there are no facts alleged that would allow a jury to conclude that defendants violated Sharp’s ADA or FMLA rights. Contrary to this assertion, there are several disputed material facts relevant to these claims. For the *456 most part, the disputed facts that are relevant to the ADA and FMLA claims are the same disputed facts that are relevant to the workers’ compensation claim discussed above.
The McDonnell-Douglas burden-shifting framework applies to Sharp’s ADA and FMLA claims. As to the ADA claims, there are disputes of material fact relevant to the first step of the framework, whether Sharp can make out a prima facie case of ADA retaliation or a prima facie case of disability discrimination.
Addressing Sharp’s ADA retaliation claim, the majority again dismisses as “in-apposite” Sharp’s examples of other employees who failed to report incidents in accordance with Waste Management’s policy but were not fired. Maj. Op. at 450. Again, whether or not these examples could convince a jury that defendants treated Sharp differently than other employees should be up to a jury.
The majority also says that the timing of Sharp’s termination—just after Waste Management received a letter from Sharp’s attorney outlining his potential legal claims, including ADA claims—cannot raise an inference that Sharp was fired in retaliation for exercising his ADA rights. Maj. Op. at 450. To support this view, the majority reiterates its view that there is no dispute that Sharp failed to report his injury and refused to fill out workers’ com.pensation- paperwork. It indicates that these facts render the timing irrelevant. Other than again incorrectly asserting that these two facts are not disputed, the majority provides no explanation for why the timing of Sharp’s termination could not support a jury finding of ADA retaliation.
As for the disability-discrimination claim, the majority also asserts that Sharp’s testimony that Saunders said Sharp was not fit to drive does not show that Saunders regarded Sharp as disabled. The majority mentions that Saunders let Sharp drive before telling him he was unfit to drive. From that fact, it concludes that Saunders’s statement could not mean he regarded Sharp as disabled. Maj. Op. at 450. Weighing Saunders’s past acts more heavily than his statement draws an inference in favor of defendants.
There are also disputes of material fact relevant to, whether Sharp can make out a prima facie case for FMLA retaliation. Addressing Sharp’s FMLA retaliation claims, the majority simply reiterates its assertions that the timing of Sharp’s termination is not sufficient evidence of causation and that Sharp cannot show that Waste Management’s reasons for firing him were pretext. Maj. Op. at 451. As discussed above, these assertions either glide over questions that should be answered by a jury or mischaracterize Sharp’s evidence.
Because there are material factual disputes, the district court’s grant of summary judgment on these claims should be reversed.
IV. PUBLIC-POLICY CLAIM
Finally, the majority argues that defendants are entitled to summary judgment on Sharp’s Ohio public-policy claim. Although both parties moved for summary judgment on this claim, there is a genuine dispute of material fact and summary judgment is not appropriate.
Sharp argues that Waste Management fired him for consulting an attorney. It is a violation of Ohio public policy to fire an employee for consulting an attorney. Chapman v. Adia Servs., Inc., 116 Ohio App.3d 534, 688 N.E.2d 604, 609-10 (1997); see also Boyd v. Winton Hills Med. & Health Ctr., Inc., 133 Ohio App.3d 150, 727 N.E.2d 137, 143 (1999) (“[I]n Chapman v. Adia Servs., Inc. ... we held that Ohio’s public policy prohibits an employee from being fired solely for consulting an attorney.”).
The majority asserts that defendants’ comments telling Sharp he cannot consult *457 an attorney about his workers compensation claim do not support the inference that Sharp was fired for consulting an attorney. Maj. Op. at 449. Here again, the majority glides over a disputed of fact instead of recognizing that this case presents a quintessential jury question. Sharp testified that defendants told him he could not consult an attorney about workers’ compensation and that when he insisted on consulting an attorney they terminated him. Sharp Aff. at ¶¶ 5, 37-41. He argues that this exchange justifies the inference that Waste Management fired him because he consulted an attorney about workers’ compensation. Defendants dispute Sharp’s testimony and say they fired Sharp for failing to follow the company policy about reporting workplace injuries. R. 41 (Def.’s Mot. for Summ. J., Ex. A, Saunders Deck at ¶ 9). This is a factual dispute that a jury should resolve.
The district court’s grant of summary judgment on the public-policy claim should be reversed as neither party is entitled to summary judgment on this claim.